**In the Matter of NORTHLAND POINT PARTNERS, Debtors.**

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**The STOUFFER CORPORATION, Defendant.**

No. 82–05387–W.

Adv. No. 82–2277–W.

United States District Court,
E.D. Michigan, S.D.

Feb. 8, 1983.

Donald B. Lifton, Southfield, Mich., for Northland Point.

W.A. Steiner, Jr., Nancy S. Martin, Timothy VanDusen, Detroit, Mich., for Stouffer.

MEMORANDUM OPINION

DeMASCIO, District Judge.

In August 1981, Stouffer Corporation (Stouffer) decided that it could no longer profitably operate Northland Inn as a hotel. Northland Point Partners (Northland Point), the landlord under a lease that expires in 1987, filed an action against Stouffer in the Oakland County Circuit Court

seeking damages and specific performance of the lease to require Stouffer to continue to operate the hotel. Since the parties were of diverse citizenship, Stouffer removed the action to the United States District Court. The Prudential Insurance Company of America (Prudential) declared its mortgage in default and took an assignment of the lease as the mortgagee of the property. Prudential filed a separate action against Stouffer in this court seeking an injunctive order requiring Stouffer to continue to manage and operate the property as a hotel. We denied Prudential's request for a preliminary injunction in September 1981. Several days thereafter, Northland Point filed a Chapter 11 petition for reorganization in the bankruptcy court. Both actions against Stouffer were promptly removed to the bankruptcy court and consolidated for trial.

Stouffer has now moved pursuant to Federal Rules of Civil Procedure 12(h)(3) for dismissal of the bankruptcy proceedings contending that the bankruptcy court lacks subject matter jurisdiction under the interim rule adopted by the United States District Court or, in the alternative, for a withdrawal of the automatic reference to the bankruptcy court pursuant to that rule. Stouffer contends that the interim rule we adopted at the direction of the Judicial Council for the Sixth Circuit cannot confer jurisdiction upon the bankruptcy court to resolve its state-law dispute with Northland Point and Prudential. Specifically, Stouffer argues that neither the district court nor the judicial council has the power to promulgate a rule to fill the jurisdictional lapse created by congressional inaction after the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We disagree. We find that Congress and the United States Supreme Court have long recognized the power of Article III courts, in the absence of legislation to the contrary, to administer the business properly brought before them. The United States District Court for the Eastern District of Michigan had the power to adopt the interim rule

pursuant to a resolution of the Sixth Circuit Judicial Council.

In 1939, Congress, by legislation, created the Judicial Councils of the Circuits. 53 Stat. 1223. The power of these councils has continued, with minimum modifications, up through the recent amendments to that statute. The pertinent grant of power to these councils, which are mainly composed of circuit judges, now reads as follows:

§ 332 Judicial Councils—

(d)(1) Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit . . .

(2) All judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council.

(3) Unless an impediment to the administration of justice is involved, regular business of the courts need not be referred to the council.

The Supreme Court has determined that this grant of power to the councils is constitutional, and that the statute did confer management powers on the council. *Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970). In his concurring opinion, Justice Harlan clarified the scope of § 332 when he stated that:

Within the framework of the statutes establishing the inferior courts and defining their jurisdiction, the Judicial Councils are charged with the duty to take such actions as are necessary for the expedition of the business of the courts in each circuit. *Id.,* at 108, 90 S.Ct. at 1665.

Two present Justices of the Supreme Court have informally noted on separate occasions the need for the judicial councils to assert the management power bestowed upon them by 28 U.S. § 332. Chief Justice Burger, then a Judge of the District of Columbia Circuit, stated that:

The Judicial Councils of the Circuits must assume and discharge the statutory duties, which Congress gave them at their own insistence in 1939. Under section 332 the Circuit Councils must operate as the active managing directors and give

full effect to the policies and programs agreed upon in the expanded Judicial Conference of the United States. They must be managers, not just spectators, of how the courts are run. *The Courts on Trial,* 22 F.R.D. 71, 82 (1958). Later, Justice Brennan also commented on the need for the judicial councils to exercise the powers statutorily bestowed upon them. *The Continuing Education of the Judiciary in Improved Procedures,* 28 F.R.D. 42, 44 (1960). Justice Brennan noted that the failure of the councils to act would generate the mistaken belief that the councils did not have the statutory power to act. *Id.,* at 44.

These two Justices acknowledge, therefore, that Congress has statutorily affirmed the broad power of the judicial councils to manage the judicial business of the circuit. *See, In Re Imperial "400" National, Inc.,* 481 F.2d 41 (3d Cir.1973). The Sixth Circuit Judicial Council acted pursuant to this grant of power when it promulgated its resolution directing the district courts of this circuit to adopt the interim rule. In turn, the United States District Court for the Eastern District of Michigan complied with the statute when it adopted the interim rule. 28 U.S.C. § 332(d)(2). It is clear that the council's obligation to assure the "effective and expeditious administration of justice within this circuit" would have been ill-served if there had been no response to the Supreme Court's refusal to extend the stay in *Marathon.* Aside from this clear statutory grant of power to the judicial councils, there has long been recognized an inherent power of Article III courts "to provide themselves with appropriate instruments required for the performance of their duties." *Ex Parte Peterson,* 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920). *See Power Commission v. Interstate Gas Co.,* 336 U.S. 577, 588–89, 69 S.Ct. 775, 781, 93 L.Ed. 895 (1949) (Frankfurter, J., concurring); *Reed v. Cleveland Board of Education,* 607 F.2d 737, 746 (6th Cir.1979).

Thus, Article III courts do have the power to administer themselves. We must next, however, determine whether there is any statutory provision that would preclude the exercise of this power in this particular instance. In making this examination, our principal concern is whether the federal courts have subject matter jurisdiction over bankruptcy proceedings after *Marathon.* We hold that *Marathon* did not create a jurisdictional lapse. Relevant statutory provisions taken singularly and conjunctively manifest the Congressional intention that, at the very least, federal district courts would retain jurisdiction of matters arising under Title 11 or arising in or related to cases under Title 11 until April 1, 1984. Congress carefully kept in effect, until 1984, a statutory provision that gives federal courts "original jurisdiction, exclusive of the courts of the states, of all matters and proceedings in bankruptcy." 28 U.S.C. § 1334. Since Congress did enact a new § 1334 to take effect in 1984, we cannot assume, as has been suggested, that Congress inadvertently continued present § 1334 or that Congress intended to repeal it. *See,* 128 Cong.Rec. H 9641 (Daily Ed. December 13, 1982). Congress made clear, through incorporation by reference, that the jurisdictional powers of the federal district courts would not change during the transitional period. §§ 404 and 405, Bankruptcy Reform Act of 1978 (P.L. 95–598). There is a sound explanation for Congress' action in leaving § 1334 intact. Congress was concerned about the constitutionality of the broad jurisdictional grant afforded to bankruptcy judges in the Bankruptcy Reform Act of 1978, and wanted to assure, at a minimum, that the federal courts maintained jurisdiction over bankruptcy proceedings. *See,* H.Rep. No. 595, 95th Cong., 2d Sess. 5, reprinted in 1978 U.S.Code Cong. and Ad.News 5787, 6023–6049 (Congressman Rodino solicited opinions on the constitutionality of the proposed bankruptcy legislation from numerous constitutional scholars). We recognize, of course, that Congress did not intend that federal district courts would exercise indefinitely the jurisdictional grant contained in the present 28 U.S.C. § 1334. *See, Marathon, id.* —— U.S. at ——, n. 40, 102 S.Ct. at 2880, n. 40. However, this limitation on the period in which federal district courts have jurisdiction over bankruptcy proceedings does not change the fact that Congress has vested

the district courts at least until 1984 with jurisdiction over bankruptcy matters.

 Since federal district courts still have jurisdiction over bankruptcy proceedings and the judicial councils have the power to direct the manner in which the business of the circuit will be administered, we hold that the cause of action against defendant Stouffer has been properly referred to a bankruptcy judge. Defendant's motion to dismiss will, therefore, be denied. The interim rule clearly provides for de novo review by an Article III district judge of any proceeding "related to" bankruptcy. *See,* Interim Rule d(3)(B). The Rule, therefore, satisfies the "judicial power" concerns raised by the plurality in *Marathon, id.* ──

U.S. at ──── ──, 102 S.Ct. at 2873–2880; *See, Crowell v. Benson,* 285 U.S. 22, 51, 54, 52 S.Ct. 285, 292, 293, 76 L.Ed. 598 (1932). Since Stouffer has given no other reason for withdrawal of the reference to the bankruptcy court, its motion for withdrawal of reference will be denied. Accordingly, we reaffirm and incorporate by reference all of the provisions of our January 7, 1983 order as though fully set forth herein.

IT IS SO ORDERED.