# In re MATLOCK TRAILER CORP.

## WALTER E. HELLER AND COMPANY SOUTHEAST, INC.

v.

## MATLOCK TRAILER CORP.

Bankruptcy No. 382–02778.
Adv. No. 382–0755.
No. 3:83–X–5.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 23, 1983.

**320**

John H. Bailey and Julie Jones, Bass Berry & Sims, Nashville, Tenn., for plaintiff.

Paul Jennings and Wm. Caldwell Hancock, Waddey & Newport, Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, Chief Judge.

The questions submitted for decision in the above-styled cause concern the jurisdiction of the United States Bankruptcy Courts for this judicial district in cases commenced under title 11 of the United States Code (Bankruptcy) and in civil proceedings arising under title 11 or arising in or related to cases under title 11, in light of the U.S. Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Walter E. Heller and Co. Southeast Inc., a secured creditor of the Matlock Trailer Corp., and plaintiff in an action against Matlock for relief from the automatic stay imposed by 11 U.S.C. § 362, moves to dismiss the title 11 proceedings commenced by Matlock in the United States Bankruptcy Court for this district on the grounds that both the district court and the bankruptcy court lack jurisdiction as a result of the Supreme Court's decision in *Northern Pipeline, supra.*

Stemming from a combination of events, at the very least unique, this matter now before the court involves § 241(a) of the Bankruptcy Act of 1978, by design not yet fully effective as law, now unconstitutional in part after the decision in *Northern Pipeline, supra.* It also involves an attack upon the constitutionality of a local rule adopted by this court [1] and all other district courts of this circuit to govern the interim administration of the bankruptcy system, and an opinion filed by two bankruptcy judges for this district who wrote that "the Supreme Court's decision in *Northern Pipeline* left [the bankruptcy court] without any subject matter jurisdiction to hear any bankruptcy petition commenced after December 24, 1982," and who found that "the adoption of the emergency rule by the United States District Court for Middle Tennessee is patently unconstitutional and cannot confer subject matter jurisdiction to [the bankruptcy court]." [2] Indeed, it might be said that this matter was precipitated by a statement made by the bankruptcy judges to the effect that their decision left debtors with no court in which to seek relief under the Bankruptcy Act of 1978.

### I. Structure of the Act

The 1978 legislation entitled "An Act to Establish a Uniform Law on the Subject of

---

1. Administrative Order No. 28. Effective December 25, 1982.

2. *See, In re: James C. Conley et al.,* 26 B.R. 885, mem. Paine, Lundin, JJ., (Bkrtcy.M.D. Tenn.1983).

Bankruptcies,"[3] (hereinafter "Act") consists of four separate and distinct titles. Title 1 is called "Enactment of Title 11 of the United States Code," and is the substantive bankruptcy law under the new Act. Title II consists of amendments made to title 28 of the U.S.C. It contains provisions creating the new bankruptcy courts, governing the appointment of judges, clerks, and other court personnel, establishing the jurisdiction and venue of the new courts, providing a framework for appeals from final judgments, orders, and decrees of the bankruptcy courts, setting out duties of the U.S. Trustees, and concerning various other amendments to title 28 of the Code. Title III of the 1978 Act amends statutes affecting the administration of bankruptcy, and title IV, labelled "Transition," includes provisions dealing generally with courts, procedure, and jurisdiction during the transition period (October 1, 1979 through March 31, 1984). Title IV also deals with the repeal of existing bankruptcy law, the effective dates of provisions under the new Act, savings provisions, and the transfer of cases, matters, and proceedings to the newly created courts of bankruptcy on April 1, 1984. *See generally,* 1 *Collier on Bankruptcy,* ¶¶ 7.00–7.12, at 7–2 to 7–85 (15th ed. 1982). Suffice it to say that although Congress enacted a comprehensive revision of the bankruptcy laws in 1978, and made significant alterations in both the substantive and procedural law, it did not intend for the new court system created thereby to become effective immediately. Instead, for a number of reasons, Congress devised a plan whereby the former referees in bankruptcy (renamed "bankruptcy judges") and newly appointed bankruptcy judges, would exercise the jurisdiction and powers conferred upon the continued 1898 courts of bankruptcy during the transition period established by the Act. Relevant provisions of title IV of the Act concerning jurisdiction of the courts during the transition period will be discussed at some length in part III, *infra.*

Section 241(a) of the Bankruptcy Act of 1978 amends title 28 of the United States Code. It is located in title II of the Act, and is codified at 28 U.S.C. §§ 1471–1482 (Supp.1981). This section of the Act is divided into twelve separate sections dealing with jurisdiction, venue, and powers of the new bankruptcy courts, and detailing appellate procedure under the new system. Section 1471 of title 28, U.S.C., is the portion of 241(a) that grants jurisdiction to district courts of all cases and related proceedings under the 1978 Act. This section further provides that the bankruptcy court for the district in which a case is commenced shall exercise all the jurisdiction granted to the district courts. The statute is set out below in its entirety:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

Although sub-sections (a) and (b) above, initially vest all jurisdiction relating to bankruptcy in the district courts, subsection (c) delegates exercise of such jurisdiction to the bankruptcy court for the district in which a case under title 11 is commenced. "Thus, the ultimate repository of the Act's broad jurisdictional grant is the bankruptcy courts." *Northern Pipeline, supra,* —— U.S. ——, —— n. 3, 102 S.Ct. 2858, 2862 n. 3, 73 L.Ed.2d 598, 604 n. 3. It is this broad "grant" of jurisdiction to non-Art. III bankruptcy courts that a plurality of members of the Supreme Court found to be violative of Art. III of the Constitution.

---

**3.** Pub.L. 95–598, 92 Stat. 2549. Effective Oct. 1, 1979.

With this very basic background in mind, the task now is to determine what effect, if any, the Supreme Court's decision in *Northern Pipeline* has on this court's jurisdiction of bankruptcy matters.

## II. Northern Pipeline Co. v. Marathon Pipe Line Co.

The bankruptcy judges for this district have held that this court lacks subject matter jurisdiction over bankruptcy cases. "The district court," they state, ". . . clearly has no jurisdiction under § 1471 since the Supreme Court found § 241(a) of the Act to be unconstitutional in its entirety."[4] It must be noted at the outset that a majority of justices could not agree on an opinion in the *Northern Pipeline* case. Thus, the justices filed four separate opinions, no single one of which commanded even a mere majority of the members of the Court.

Four of the justices described the question presented as whether or not, ". . . the assignment by Congress to bankruptcy judges of the jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978, 28 U.S.C. § 1471 (1976 ed., Supp. III) violates Art. III of the Constitution." In reaching a decision, these justices analyzed cases dealing with the authority of Congress to create courts other than by use of its power under Art. III of the Constitution; and in so doing, they "constructed a series of categories that circumscribes Congress' power to create legislative tribunals."[5] Then, examining the entire grant of authority contained in the Act, the plurality of four justices concluded that such a broad delegation of judicial power by Congress to non-Art. III courts could not be sustained under Congress' power to create "legislative" courts, or under Congress' power to create "adjuncts" to Art. III courts. They held that, ". . . the broad grant of jurisdiction to

the bankruptcy courts contained in § 241(a) is unconstitutional. . . ."[6]

Justices Rehnquist and O'Connor disagreed that the question presented for review was as broad as that stated by the plurality. Since the Marathon Pipeline Company (Marathon) had not been subjected to the full range of authority granted to bankruptcy courts by § 241(a), they felt that the Court was acting prematurely by addressing the larger issue of Congressional power. The two justices believed that the case could be decided without generally prescribing the limits of Congress' power to vest judicial power in non-Art. III courts. Chiding the plurality for its failure to observe well-established rules governing constitutional decision-making, Justice Rehnquist wrote:

> Particularly in an area of constitutional law such as that of "Art. III Courts," with its frequently arcane distinctions and confusing precedents, rigorous adherence to the principle that this Court should decide no more of a constitutional question than is absolutely necessary accords with both our decided cases and with sound judicial policy.[7]

Stating that he need not determine whether or not the cases discussed by the plurality, ". . . in fact support a general proposition and three tidy exceptions, as the plurality believes, or whether instead they are but landmarks on a 'judicial darkling plain' where ignorant armies clash by night, as Justice White apparently believes . . .,"[8] Justice Rehnquist determined that none of the cases supported the type of adjudication to which Marathon would be subjected against its will under the 1978 Act. Thus, the two justices stated that they would hold "so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court to entertain and decide [Northern Pipeline Company's] lawsuit over Marathon's objection to be vio-

---

**4.** *In Re Conley, supra.*

**5.** Chayes, *Foreword: Public Law Litigation and the Burger Court,* 96 Harv.L.Rev. at 257 (1982).

**6.** *Northern Pipeline, supra,* —— U.S. at ——, 102 S.Ct. at 2874, 73 L.Ed.2d at 625.

**7.** *Id.,* —— U.S. at ——, 102 S.Ct. at 2875, 73 L.Ed.2d at 627.

**8.** *Id.,* —— U.S. at ——, 102 S.Ct. at 2875, 73 L.Ed.2d at 628.

lative of Art. III of the United States Constitution." [9]

Chief Justice Burger joined Justices White and Powell in dissent and wrote separately to emphasize the fact that "notwithstanding the plurality opinion," the Court did not hold the Congress' broad grant of jurisdiction to the new bankruptcy courts generally violated Art. III of the Constitution. "Rather," the Chief Justice wrote,

the Court's holding is limited to the proposition stated by Justice Rehnquist in his concurrence in the judgment—that a "traditional" state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an "Art. III court" if it is to be heard by any court or agency of the United States.[10]

Because a majority of the members of the Court did not join the plurality opinion, the only clear holding in the case is that without the consent of all parties thereto, non-Art. III bankruptcy judges cannot constitutionally be vested with power to decide state common-law actions brought pursuant to the Act and related only "peripherally" to a bankruptcy case adjudicated under federal law. The Court reviewed the jurisdictional grant of § 241(a) and concluded that since Congress vested jurisdiction of all cases and related proceedings in bankruptcy in a single non-Art. III forum pursuant to a single statutory provision, the Court could not simply remove jurisdiction of bankruptcy courts over such state common-law actions while leaving intact the remaining grant of jurisdiction over cases and other proceedings related to bankruptcy adjudications. Thus, the Court removed jurisdiction of the non-Art. III bankruptcy courts in its entirety. However, nothing in the opinions of either the plurality or the two justices

concurring in the judgment even remotely suggests, as the bankruptcy judges for this district have so held, that jurisdiction in bankruptcy affairs is now vested in no court at all.[11]

■ It is the opinion of this court that the single statutory grant of jurisdiction to the non-Art. III bankruptcy court (28 U.S.C. § 1471(c)) contained in § 241(a) of the Bankruptcy Act of 1978, has been declared to be in violation of Art. III of the Constitution. It is further the opinion of this court that the provisions of § 241(a) which initially vest jurisdiction in the district courts, remain intact, and that all jurisdiction in cases and related proceedings in bankruptcy is vested in the district court. Regardless of the precise holding in *Northern Pipeline,* it is clear that this court retains jurisdiction of bankruptcy cases and proceedings at least until the expiration of the transition period on April 1, 1984.

### III. "Transition" provisions

The holding of the Supreme Court in *Northern Pipeline* is made somewhat more confusing by the fact that certain key provisions of the 1978 legislation have not yet become effective as law. Section 402(b) provides that the amendments made by title II of the Act, except as otherwise provided, shall take effect on April 1, 1984. Both section 241(a) which contains the provision vesting jurisdiction in the bankruptcy courts, and section 201(a) which contains the provision creating the new non-Art. III courts, are located within title II of the Act, are not otherwise provided for, and therefore take effect on April 1, 1984. Thus, viewing the case in this light, it appears that the Supreme Court has declared unconstitutional a grant of jurisdiction, not yet effective, to a court, not yet in existence.

However, section 405(a)(1) of the Act provides that during the transition period, ref-

**9.** *Id.*

**10.** *Id.*

**11.** Note 40 of the plurality opinion in *Northern Pipeline, supra,* — U.S. ——, ——, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598, 625, does not sup-

port the conclusion that the jurisdictional grant contained in § 241(a) of the Act is unconstitutional in its entirety. The note merely addresses the propriety of the removal of only a portion of the jurisdiction granted to non-Art. III bankruptcy courts by section 241(a).

324

erees in bankruptcy (continued as bankruptcy judges) and newly appointed bankruptcy judges under the Act, may exercise in all cases commenced under title 11, the jurisdiction and powers conferred upon the continued 1898 courts of bankruptcy except with respect to injunctions of other courts, certain kinds of criminal contempts, and appeals from the judgments, orders, and decrees of U.S. bankruptcy judges. Indeed, the Act requires most proceedings in such cases to be before a United States bankruptcy judge, except that if any proceeding in a case under title 11 is not before a U.S. bankruptcy judge, section 405(a)(2) requires it to be before the judge of the court of bankruptcy for the district in which the case is pending. Thus, in a roundabout way during the transition period, Congress provided for the exercise by non-Art. III judges serving as judicial officers of the courts of bankruptcy existing before passage of the 1978 legislation, of most if not all of the jurisdiction and powers conferred by the Act upon the new non-Art. III courts. Therefore, in order for the holding in *Northern Pipeline* to make any sense at all, it must be viewed as a prohibition against the exercise by non-Art. III judges of any of the broad jurisdiction granted to the 1898 courts of bankruptcy continued by the 1978 Act.

During the established interim period, section 404(a) of the Act provides that the courts of bankruptcy as defined and created by the Bankruptcy Act of 1898 continue through the transition period to be the courts of bankruptcy for purposes of the 1978 legislation and the amendments made thereto. Each of the courts of bankruptcy so continued constitutes a separate department of the district court "that is such court of bankruptcy under the [1898] Act." Thus, during the transition period, this district court continues as a court of bankruptcy for purposes of the Bankruptcy Act of 1978. As such, it is entitled by § 405(b) of the Act to exercise the grant of jurisdiction and powers contained in § 241(a) of the

Act.[12] It goes without saying that this court is an Article III court. Therefore, no objection can be made to this court's exercise of all jurisdiction conferred upon it by § 405(b) of the Act on the ground that such exercise is in violation of Art. III of the Constitution.

One additional source of district court jurisdiction is to be found in title 28, § 1334, of the United States Code, which provides that:

The district courts shall have original jurisdiction, exclusive of the states, of all matters and proceedings in bankruptcy.

The bankruptcy judges have held that this court possesses no jurisdiction over bankruptcy adjudications by virtue of § 1334. To say that this section of the Code continues original jurisdiction in the district courts over matters and proceedings in bankruptcy, they argue, is in direct conflict with specific provisions of the 1978 Act. Because 28 U.S.C. § 1471(c) (enacted in 1978) vests the entirety of district court jurisdiction over bankruptcy adjudications in the bankruptcy court, they conclude, the district court simply possesses no subject matter jurisdiction over cases and proceedings in bankruptcy. To say the least, this argument is inconsistent with earlier findings made by the bankruptcy court. In light of the fact that the statute relied upon by the bankruptcy judges is located within § 241(a) of the Act, previously found to be unconstitutional in its entirety by the bankruptcy court, it is difficult to understand how the same can nevertheless be resurrected to block the exercise by district courts of the jurisdiction granted by § 1334.

The fact of the matter is that Congress, for whatever reason, kept the jurisdictional grant to the district courts contained in 28 U.S.C. § 1334 in full force and effect until April 1, 1984. At that time, the provisions contained in § 238 of the Act become effective, and § 1334 is thereby amended to grant appellate jurisdiction to the district courts from final judgments, orders, and

12. Section 405(b) of the Act provides that the amendments made by § 241(a) apply to courts of bankruptcy continued through the transition period the same as such amendments apply to the United States Bankruptcy Courts established under § 201 of the Act.

decrees of the bankruptcy courts. Far from being inconsistent with provisions under the new Act, the jurisdictional grant of § 1334 seems entirely consistent with the period of transition devised by Congress for the winding-up of pending 1898 Bankruptcy Act cases and the handling of cases begun under the 1978 legislation. *See, 1 Collier on Bankruptcy,* ¶ 3.01, at 3–38 (15th ed. 1982).

In light of the foregoing memorandum, the court need not determine the exact parameters of the grant of jurisdiction contained in 28 U.S.C. § 1334. Once a petition has been filed pursuant to title 11 of the Code, the jurisdiction granted by § 1334 is sufficiently broad to give this court original and exclusive jurisdiction over all matters and proceedings relating to the administration of the bankrupt's estate and the property within the court's possession. Suffice it to say that in the matter at hand, Matlock, a debtor, commenced a proceeding in bankruptcy within the scope of 28 U.S.C. § 1334. Heller, a secured creditor of Matlock, seeking relief from the provisions of 11 U.S.C. § 362, initiated an adversary proceeding to terminate the "automatic stay" granted by that statute. If the commencement of such an action does not itself fall within the definition of a "matter" or a "proceeding" in bankruptcy, then it is at least an action arising under the laws of the United States and within the jurisdiction conferred upon this court by 28 U.S.C. 1331.[13]

### IV. Conclusion

In sum, after years of consideration Congress in 1978 enacted legislation significantly changing not only the substantive law governing bankruptcy, but also the structure and organization of the judicial system responsible for administering the Bankruptcy Code. The outstanding features of the new legislation included the creation of a newly structured and independent bankruptcy court system and a substantial expansion of jurisdiction over cases and proceedings in bankruptcy. Through the creation of a new, independent court vested with extensive jurisdiction and power over bankruptcy matters, Congress sought to consolidate within a single independent and powerful forum, the adjudication of all matters and controversies affecting the estate of a bankrupt debtor.

For the most part, the changes made in the substantive law of bankruptcy took effect within a year after enactment of the 1978 legislation. However, in order to allow time for determining the number of judges needed to run the new courts, Congress chose to delay the creation of the United States bankruptcy court system until April 1, 1984. During the period of transition established by the Act, Congress provided that the district courts would continue to be the courts of bankruptcy for purposes of the 1978 legislation. However, because it wanted all to become acquainted with the new system it had created, Congress provided that the new bankruptcy judges would serve as judicial officers of the district courts, and exercise as separate departments of the district courts, the expansive jurisdiction and power conferred by the 1978 Act upon the United States bankruptcy courts, yet unborn.

The United States Supreme Court, in the case of *Northern Pipeline Co. v. Marathon Pipe Line Co.,* effectively removed the right of non-Art. III bankruptcy judges, serving as judicial officers of the old 1898 courts of bankruptcy, to exercise any jurisdiction or power conferred upon those courts by provisions of the 1978 Act. Both the prospective nature of the decision and the stay of the judgment entered in that case were mere artifices employed by the Court to prevent substantial injustice to those who had previously submitted their causes to the jurisdiction of a federal forum lacking essential attributes required by Art. III of the Constitution. As conceptually

---

**13.** 28 U.S.C. § 1331 (Supp.1981) provides as follows:

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

difficult as it is, the mandate of the Court seems clear. All final judgments, orders, and decrees entered by the bankruptcy judges before December 25, 1982, are protected by the prospective nature of the decision and the stay entered by the Supreme Court. However, in all cases and proceedings filed pursuant to title 11 of the Code and pending in the court of bankruptcy after the effective date of the Supreme Court decision, the non-Art. III bankruptcy judges may not constitutionally exercise any of the jurisdiction or power conferred upon them by the 1978 Act.

■ Whether or not Congress intended for district courts to assume any active role in the exercise of jurisdiction over bankruptcy matters during the period of transition, the jurisdictional foundation of pre-1978 courts of bankruptcy remains undisturbed. Since it is at least clear that non-Art. III bankruptcy judges may no longer constitutionally exercise any jurisdiction or power conferred upon them by the Bankruptcy Act of 1978, responsibility for the exercise of jurisdiction in cases and proceedings commenced in this district pursuant to title 11 of the U.S.C. rests with the district court.

The next question raised concerns the propriety of the manner in which jurisdiction of cases and proceedings under the Bankruptcy Code is being exercised by this court.

### V. Administrative Order No. 28

In the matter at hand, Heller challenges the validity and constitutionality of certain provisions of the local rule adopted in Administrative Order No. 28, entered by this court on December 24, 1982. The purpose of the rule, ostensibly drafted in accordance with the provisions of Rule 53, *Fed.R.Civ. Pro.*, is to convey to the United States bankruptcy judges for this district the authority to act in bankruptcy cases and proceedings until the Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline, supra.*

Citing exceptional circumstances, and for the orderly conduct of the business of the court, the rule requires referral of all bankruptcy cases and proceedings to the bankruptcy judges. Although provision is made for the withdrawal of a reference at any time by the district court on its own motion or on "timely" motion by a party, section (c)(1) automatically refers all cases commenced under title 11 of the U.S.C. and all civil proceedings arising under title 11 or arising in or related to cases under title 11 to the non-Art. III judges for disposition in accordance with the provisions of the local rule.

With certain exceptions, not pertinent to the instant cause, the rule enables the delagatee bankruptcy judges to perform in referred cases and proceedings all acts and duties necessary for the handling thereof. Additionally, in the bankruptcy case and adversary proceeding at bar, and in all other cases and proceedings not classified by section (c)(3) of the rule as "related" proceedings, the non-Art. III judges are authorized to rule on the merits of claims asserted therein, and are invested with the judicial power to enter judgments or dispositive orders which become effective when entered by the clerk of the bankruptcy court. However, in referred "related" proceedings, the bankruptcy judges may not enter judgments or dispositive orders, but must submit findings, conclusions, and proposed judgments or orders to the district court unless the parties to the proceeding consent to the entry of judgment by the bankruptcy judge.

Section (e) of the local rule requires district court review of all proposed judgments or orders submitted by the bankruptcy judges in "related" proceedings. In conducting review, the rule provides that the district judge may hold a hearing and receive evidence, may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings made by the bankruptcy judge. At the conclusion of the review, the rule requires the district judge to enter an appropriate order or judgment. However, no such review of judg-

ments or dispositive orders entered by the bankruptcy judges in all other referred cases and proceedings is required under section (e) of the rule, unless a party initiates review in the district court or the bankruptcy judge certifies that circumstances require that the judgment or order be approved by a district judge.

Heller specifically complains of the automatic and wholesale referral made by section (c)(1) of the rule of all bankruptcy cases and proceedings to the bankruptcy judges for this district, and of the accompanying delegation of judicial power contained in section (d) therein.

The local rule challenged in this case was drafted by the Judicial Conference of the United States in anticipation of the expiration of the stay of the judgment granted by the Supreme Court in *Northern Pipeline, supra,* and of the failure by the Congress to remedy the constitutional defects of the bankruptcy system created by the 1978 legislation before the expiration of the stay. The rule was expressly adopted by this court as a temporary measure, partially in response to an order of the Judicial Council for the Sixth Circuit, and in part to provide for the orderly administration of bankruptcy cases and proceedings commenced in this district before and after the effective date of the judgment entered in *Northern Pipeline.* In effect, the rule preserves and continues the system of bankruptcy adjudication established by the 1978 Act, with the exception that in certain civil proceedings related to cases commenced under the Act, bankruptcy judges may act only in the capacity of "special masters" and may not enter final judgments or dispositive orders. The rule has been adopted by all district courts within this and other judicial circuits, thus providing a more or less uniform judicial enactment governing the exercise of jurisdiction in bankruptcy cases and proceedings during the interim while Congress deliberates.

Though there is statutory authority to support the adoption by this court of a rule governing the interim administration of the bankruptcy system, it is clear that the validity of a wholesale reference of cases and civil proceedings otherwise properly before this court, and the constitutionality of an accompanying delegation of judicial power to non-Art. III judges must be determined in accordance with the standards set out in Rule 53, *Fed.R.Civ.Pro.*[14] *See, La Buy v. Howes Leather Co.,* 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290, 297 (1957). *See also, Piper v. Hauck,* 532 F.2d 1016, 1018 (5th Cir.1976) (where order refers case to U.S. Magistrate for evidentiary hearing "in the capacity of Special Master," reference must comply with Rule 53); *citing, Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), and *Wingo v. Wedding,* 418 U.S. 461, 471 n. 11, 94 S.Ct. 2842, 2848 n. 11, 41 L.Ed.2d 879, 887 (1974).

Although Rule 53 authorizes the appointment of masters, "to aid judges in the performance of specific judicial duties as they may arise in the progress of a cause," *Ex Parte Peterson,* 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919, 925 (1920), *La Buy, supra,* Rule 53(b) provides that, "[a] reference to a master shall be the exception and not the rule," and that, "in actions to be tried without a jury, save in matters of account and of difficult computations of damages, a reference shall be made only upon a showing that some exceptional condition requires it."[15] The cause now before the court involves the referral by this court

---

**14.** See 11 U.S.C. § 105. See also Rules 513 and 927, *Rules of Bankruptcy Procedure.* The court notes that the Judicial Council for the Sixth Circuit is empowered to make by virtue of 28 U.S.C. § 332, all necessary orders for the effective and expeditious administration of the business of the courts within the circuit. However, the court rejects any argument that such statutory authorization could somehow support an otherwise unconstitutional order made pursuant thereto. *See, In Re: Northland Point Partners,* 26 B.R. 1019, 1022, mem. DeMascio, J. (D.C.E.D.Mich.1983).

**15.** See, *Cruz v. Hauck,* 515 F.2d 322, 330 (5th Cir.1975) (Policy underlying the limitation of Rule 53(b) is the alleviation of unnecessary burdens to litigants, and the cornerstone of the rule is the avoidance of delay, costs, and a fact-finder other than a judge).

of a bankruptcy case commenced under title 11 of the U.S.C. by the Matlock Trailer Corp., and the referral of a civil proceeding arising under 11 U.S.C. § 362 initiated by the Walter E. Heller Company. Both are actions to be tried without a jury, and both have been referred to the bankruptcy judges for this district by section (c)(1) of the local rule without any showing that exceptional conditions require such referral. Thus, as applied to these proceedings, the court holds that the initial across-the-board referral of all bankruptcy cases and proceedings made by section (c)(1) of the local rule now in effect in this district is invalid, and that such wholesale referral cannot be sustained as a reference pursuant to the provisions of Rule 53, *Fed.R.Civ.Pro.*

In addition, it is obvious that the amount of judicial power delegated to the non-Art. III bankruptcy judges by section (d) of the local rule exceeds the maximum allowable under the provisions of Rule 53. In the instant cause, section (d)(2) of the local rule permits the bankruptcy judge to whom the case and proceeding under title 11 are assigned to enter judgment or a dispositive order without approval or review of such action by the district court. Moreover, the rule provides that such judgment or order is effective upon entry by the clerk of the bankruptcy court even in the absence of district court review or approval of the bankruptcy judge's findings and conclusions. Though a district judge may appoint a special master in certain civil cases to assist in the performance of specific judicial duties, the office of the special master is merely to carry out the instructions of the court and to present the case in such a manner so that the court may take informed action thereupon. It is action by the court, and not by the special master, that should finally determine the rights of the litigants involved.

█ Therefore, as applied to the case and proceeding involved in the instant cause, the court finds that the provisions of the local rule discussed herein, amount to little less than an unconstitutional abdication of the judicial function depriving the parties of a determination by this court on the basic issues involved in this litigation. The referral of these matters to the bankruptcy judges for this district cannot be sustained on such terms as are contained within the rule adopted by this court in Administrative Order No. 28. Having so held, the court does not mean to suggest that a referral of these matters to the U.S. bankruptcy judges for this district is somehow inherently improper. Any such referral of bankruptcy cases and proceedings must, however, comport with basic statutory and constitutional requirements.

█ The court now finds that exceptional conditions require the re-referral of the bankruptcy case and proceeding involved in this cause to the U.S. bankruptcy judges for this district. The exceptional conditions include the unanticipated unconstitutionality of the grant of power to bankruptcy judges contained in section 241(a) of the Bankruptcy Act of 1978; the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; the availability of specialized expertise necessary for the expeditious handling of bankruptcy matters; and the fact that the bankruptcy judge who initially handled these matters is far more familiar with this litigation than is this court.

The bankruptcy case involved in this cause will be referred to the U.S. bankruptcy judges for this district for the purpose of proper administration in accordance with the provisions of title 11 of the U.S.Code. The bankruptcy judges will be appointed to serve in the capacity of special masters and shall have the power to do all acts and take all measures necessary or proper for the efficient administration of such case. However, the exercise of such power and the performance of such duties shall be in accordance with the provisions and limitations of Rule 53, *Fed.R.Civ.Pro.* Where the provisions of title 11 call for action by the court in the administration of such bankruptcy case, the bankruptcy judge shall submit a proposed order, and if required by the court, proposed findings of fact and conclusions of law. The court will accord such weight to the findings of fact and conclu-

sions of law submitted by the bankruptcy judge as is provided by Rule 53.

The adversary proceeding pursuant to 11 U.S.C. § 362, shall also be referred to the bankruptcy judges for this district for the purpose of conducting such evidentiary hearings as are necessary and proper for the determination of the merits of the claims involved in that action. The bankruptcy judges will be appointed to serve in the capacity of special masters, and shall have the power to do all acts and take all measures necessary for the efficient performance of such duties. However, the exercise of such power and the performance of such duties shall be in accordance with the provisions and limitations of Rule 53, *Fed.R.Civ.Pro.* At the end of such hearing, or hearings, the bankruptcy judge will prepare a proposed order and shall submit findings of fact and conclusions of law to this court for review. The court will accord such weight to the findings of fact and conclusions of law submitted by the bankruptcy judge as is provided by Rule 53.

For the services they perform, the bankruptcy judges will receive no compensation other than the compensation to which they are entitled by virtue of their employment with the United States Government. The referred case and proceeding may be assigned by the bankruptcy judges in accordance with the bankruptcy court's usual system for the assignment of cases. The referred matters may also be transferred in whole or in part between the bankruptcy judges for this district without prior approval of this court.

The clerk of the bankruptcy court will be designated to maintain the files in this bankruptcy case and adversary proceeding, and all future papers to be submitted in these causes will be filed with the clerk of the bankruptcy court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of this court.

An appropriate order will be entered.

## ORDER

In accordance with the memorandum contemporaneously filed, it is ORDERED that:

(1) The referral of the above-styled bankruptcy case and proceeding to the bankruptcy judges for this district, made by Section (c)(1) of the rule adopted in Administrative Order No. 28, is hereby declared to be invalid.

(2) The United States Bankruptcy Judges for the Middle District of Tennessee, Keith M. Lundin and George C. Paine, are hereby appointed to act as special masters in the above-styled bankruptcy case and proceeding.

(3) The above-styled bankruptcy case is hereby referred to the special masters for the purpose of proper administration in accordance with the provisions of title 11 of the United States Code. The special masters shall have the power to do all acts and take all measures necessary or proper for the efficient administration of such bankruptcy case. However, the exercise of such power and the performance of such duties shall be in accordance with the provisions and limitations of Rule 53, *Fed.R.Civ.Pro.* Where the provisions of title 11, U.S.C., call for action by the court in the administration of such bankruptcy case, the special masters shall submit a proposed order, and if required by the court, proposed findings of fact and conclusions of law. The court will accord such weight to the findings of fact and conclusions of law submitted by the special masters as is provided by Rule 53.

(4) The above-styled civil proceeding is hereby referred to the special masters for the purpose of conducting such evidentiary hearings as are necessary and proper for the determination of the merits of the claims involved in that action. The special masters shall have the power to do all acts and take all measures necessary for the efficient performance of such duties. However, the exercise of such power and the performance of such duties shall be in accordance with the provisions and limitations of Rule 53, *Fed.R.Civ.Pro.* At the end of such hearing or hearings, the special masters shall prepare a proposed order and shall submit findings of fact and conclusions of law to this court for review. The

court will accord such weight to the findings of fact and conclusions of law submitted by the special masters as is provided by Rule 53.

(5) The referred case and proceeding may be assigned by the special masters in accordance with the bankruptcy court's usual system for the assignment of cases. The referred matters may also be transferred in whole or in part between the special masters without prior approval of this court.

(6) For the services they perform, the special masters shall receive no compensation other than the compensation to which they are entitled by virtue of their employment with the United States Government.

(7) The clerk of the bankruptcy court is hereby designated to maintain the files in the above-styled matters, and all future papers to be submitted in these causes shall be filed with the clerk of the bankruptcy court regardless of whether the case or proceeding is before a special master or a judge of this court.

It is so ORDERED.