In re LEAR COLORPRINT, Debtor.

LEAR COLORPRINT CORPORATION, an Illinois corporation, Allen Steinberg, Leonard Steinberg and Eudyce Steinberg, individually, Plaintiffs,

v.

ENCO MANUFACTURING COMPANY, a corporation, and Charles Usiskin d/b/a Colex Machine Tools & Accessories, and individually, Defendants.

Bankruptcy No. 82 B 10233.
Adv. No. 82 A 3460.

United States District Court,
N.D. Illinois, E.D.

April 19, 1983.

---

Lawrence M. Cooper, Martin & Karcazes, Ltd., Chicago, Ill., for plaintiffs.

Liebling & Hauselman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Judge Toles of the Bankruptcy Court for the Northern District of Illinois, apparently acting *sua sponte,* transferred this matter to this Court for hearing on defendants' motion to dismiss for lack of subject matter jurisdiction—a motion that is based on the Supreme Court's recent decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We conclude that the question whether we or the Bankruptcy Court has subject matter jurisdiction over this matter is properly before us and find that such jurisdiction is present here and has been properly delegated to the Bankruptcy Court. Accordingly, we refer the case back to Judge Toles and direct that he proceed in this matter in conformity with paragraph (D)(3)(b) of this Court's General Order of December 20, 1982 (hereinafter "the General . Order"). The defendants' pending motion to stay discovery is also denied.

Lear Colorprint Corporation (Lear), in March 1982, entered into contracts with defendants Enco Manufacturing Co. (Enco) and Charles Usiskin (Usiskin) for production and shipment of catalogues. Thereafter, on August 5, 1982, an involuntary petition in bankruptcy was filed against Lear, and subsequently converted into a Chapter 11 proceeding, before Judge Toles. Lear, as a Chapter 11 debtor, on September 23, 1982 filed a complaint in the Bankruptcy Court against defendants Enco and Usiskin seeking to recover compensatory and punitive

\* Of P–L 95–598, 28 U.S.C. § 1471.

damages on state law theories of breach of contract and intentional tort. Lear's complaint was met with a *Marathon*-inspired motion to dismiss that ultimately was transferred here without a proposed order or findings.

█ The ambiguous *Marathon* decision is alleged by the defendants to have created a "jurisdictional vacuum" in which neither the Bankruptcy nor the District Court has jurisdiction to decide the instant dispute. We reject that incongruous position. There was not a majority opinion in *Marathon.* Justice Brennan's four-vote plurality opinion viewed the jurisdictional grant in § 241(a) \* as unconstitutional on its face and invalid in its entirety. 102 S.Ct. at 2880 n. 40. Justice Rehnquist's concurrence, in which Justice O'Connor joined, is a . masterpiece of ambiguity. Reasoning that Constitutional rulings should be strenuously limited, Justice Rehnquist appears to suggest that § 241(a) may only be unconstitutional as applied, but not on its face. He concludes, however, that part of § 241(a) is facially invalid:

> I would, therefore, hold *so much of the Bankruptcy Act of 1978 as enables a Bankruptcy Court* to entertain and decide Northern's lawsuit over Marathon's objection to be violative of Art. III of the United States Constitution. Because I agree with the plurality that *this grant of authority* is not readily severable from the remaining grant of authority *to Bankruptcy Courts* under § 241(a), see *ante* [102 S.Ct.] at 2880 n. 40, I concur in the judgment.

*Id.* at 2882. [Emphasis added.] Thus, it appears that Justice Rehnquist's concurrence, which must define the extent of *Marathon's* ruling, is limited to the jurisdictional grant to the Bankruptcy Courts.

The Rehnquist concurrence prompted Chief Justice Burger to observe that the effect of the decision would not be to require Congress "to undertake a radical restructuring of the present system of bankruptcy adjudication." The Chief Justice

reasoned that "[t]he problems arising from today's judgment can be resolved simply by providing that ancillary common law actions, such as the one in this case, be routed to the United States District Court of which the bankruptcy court is an adjunct." *Ibid.* Chief Justice Burger's view was disavowed by Brennan, *id.* at 2880 n. 40, but not by Rehnquist.

Several appellate courts have apparently concluded that the effect of *Marathon* is to make 28 U.S.C. § 1471(c) invalid, but to preserve the grant of bankruptcy jurisdiction to the District Courts under 28 U.S.C. § 1471(b) and (c). *In re Braniff Airways, Inc.,* 700 F.2d 214 (5th Cir.1982) (per curiam); *First National Bank of Tekamah, Nebraska v. Hansen,* 702 F.2d 728 (8th Cir. 1982) (per curiam); *White Motor Corp. v. Citibank,* 704 F.2d 254 (6th Cir.1983).

Even if the plurality and concurring opinions in *Marathon* taken together invalidate all of § 241(a) of P–L 95–598, 28 U.S.C. § 1471—a conclusion that we cannot accept—all federal bankruptcy jurisdiction did not expire on December 24, 1982 at the end of the second stay of *Marathon*'s mandate. The decision and the rationale in *Marathon* left unaffected current 28 U.S.C. § 1334, which provides in full:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy.

We see no basis for concluding, as the defendants would have us do, that § 1334, which plainly confers jurisdiction over this matter, was somehow impliedly repealed and is, therefore, inoperative. Defendants' speculation that Congressional inadvertence is responsible for § 1334's continued existence and viability is unsupported. Congress was clearly aware of that section when it enacted the 1978 Bankruptcy Code, for it chose specifically to amend it, effective April 1, 1984, to limit the District Courts thereafter to appellate jurisdiction of bankruptcy matters. *See* P–L 95–598, §§ 238 and 402. In light of the significant Constitutional objections raised before Congress with respect to § 241(a), see H.Rep. No. 595, 95th Cong., 1st Sess. 63–87, *reprinted in* 1978 U.S.Code Cong. and Ad.News 5963, 6023–49, it is logical that Congress wished § 1334 to remain in its present form during the so-called transition period, until April 1, 1984.

In the absence of any indication that this was not the Congressional intent, there is no persuasive basis for reversing the time-honored presumption against a finding that § 241(a) somehow "implicitly repealed" § 1334. On the contrary, the clear implication of the decision to amend § 1334 is that that section was not being repealed. *Accord In re Northland Point Partners,* 26 B.R. 1019 at 1021 (D.C.E.D.Mich.1983). *In re Braniff Airways, Inc.,* 27 B.R. 231 (D.C. N.D.Tex.1983), *aff'd,* 700 F.2d 214 (5th Cir. 1983) (per curiam); *First National Bank of Tekamah, Nebraska v. Hansen, supra,* 702 F.2d 728 (8th Cir.1983) (per curiam). *White Motor Corp. v. Citibank, supra,* 704 F.2d 254 (6th Cir.1983). Accordingly, we conclude that there is still bankruptcy jurisdiction in this and all other District Courts. *Marathon* did not precipitate a jurisdictional lapse or vacuum.[1]

The Judicial Council of the Seventh Circuit has ordered the District Courts of this circuit to adopt a rule substantially similar to that proposed on September 27, 1982 by the Judicial Conference of the United States. This Court adopted the General Order in response to that mandate. The Judicial Council acted pursuant to 28 U.S.C. § 332(d)(1), which empowers and requires it to "make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit."

---

1. As one of the two judicial members, with Judge Edward Weinfeld of the Southern District of New York, of the Commission on the Bankruptcy Laws of the United States, and recognizing that the Congress did not adopt many of the Commission's recommendations, I find no basis for concluding that the 1978 Act was intended to repeal all bankruptcy jurisdiction in the District Courts between 1978 and April 1, 1984, on which date they were then to obtain appellate bankruptcy jurisdiction under § 1334. No such concept was ever discussed and is illogical to say the least.

This Court and the Bankruptcy Judges of this Court are, therefore, obliged to implement and adhere to the General Order as directed by the Judicial Council of the Circuit. *See* 28 U.S.C. § 332(d)(2); *In re Northland Point Partners, supra,* at 1020–21.

The Judicial Council's order was undeniably "necessary ... for the effective and expeditious administration of justice." The chaos and hardship to litigants that would have ensued at the expiration of the *Marathon* stay, had there been no uniform procedure for carrying forward the business of federal bankruptcy jurisdiction, are universally acknowledged.

The order is, moreover, "appropriate" and valid. It is clear that 28 U.S.C. § 1334 continues to confer bankruptcy jurisdiction in the questionable event that 28 U.S.C. § 1471(a) and (b) do not. And it further appears that the delegations to Bankruptcy Judges contained in the General Order satisfy the Constitutional concerns expressed by the plurality and concurrence in *Marathon.*[2] *See* 102 S.Ct. at 2875–76; *United States v. Raddatz,* 447 U.S. 667, 682, 685, 100 S.Ct. 2406, 2415, 2417, 65 L.Ed.2d 424 (1980); *Crowell v. Benson,* 285 U.S. 22, 51, 54, 52 S.Ct. 285, 292, 293, 76 L.Ed. 598 (1932). *Accord In re Northland Point Part-*

*ners, supra,* at 1022. Finally, we conclude that this Court—as the Judicial Council has explicitly recognized—has the power, pursuant to 11 U.S.C. § 105(a), to promulgate the General Order as an "order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]."[3]

This contract dispute is plainly a "related proceeding" as defined in paragraph (D)(3)(a) of the General Order. Paragraph (D)(3)(b) of that order provides:

> In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

And sub-paragraph (E)(2)(a)(iii) directs the District Court to review "a proposed order or judgment lodged under paragraph (D)(3)."[4]

The defendants' final contention is that because no proposed order has been entered in the Bankruptcy Court, this matter is not properly before us and we lack "jurisdiction" under the General Order to decide this motion to dismiss.

We agree with defendants that Judge Toles should have entered a proposed order

---

**2.** The suggestion in some of the cases relied upon by the defendants that the language "matters and proceedings" in § 1334 should be read "technically," in light of the Bankruptcy Act of 1898, as conferring only former "summary jurisdiction" on the District Courts, *see, e.g., In re Jorges Carpet Mills, Inc.,* 27 B.R. 333, 10 B.C.D. 1 (Bkrtcy.E.D.Tenn.1983); *In re Conley,* 26 B.R. 885, 10 B.C.D. 10 (Bkrtcy.M.D.Tenn.1983), is conjectural and unpersuasive. The 1898 Act has been repealed and therefore should not now be read to limit the ongoing jurisdictional grant in § 1334.

**3.** Defendants have raised several objections to this Court's power under 11 U.S.C. § 105(a) to enter the General Order. Even though the Judicial Council expressly acknowledged our power under § 105(a), it is actually unclear whether any statutory authorization for that order *other than that contained in* 28 U.S.C. § 332(d)(1) and (2) is required. Moreover, in any event, it is quite clear that we would have authority under Fed.R.Civ.P. 53 to constitute the bankruptcy judges special masters to hear bankruptcy matters by a standing or general

order. *Cf. Mullinax v. Willett Lincoln Mercury,* 381 F.Supp. 422 (N.D.Ga.1974) (assignment of all Truth in Lending cases to bankruptcy judge under Fed.R.Civ.P. 53 was appropriate); *Robinson v. Central Loan and Finance Corp.,* 609 F.2d 170, 171–72 (5th Cir.1980) (same).

**4.** It follows from all of the foregoing, that a simple solution to the so-called "bankruptcy crisis" (which does not in fact exist notwithstanding the efforts of a small minority of the bankruptcy practitioners and judges to create one) is to repeal Pub.L. 95–598 § 238(a), 92 Stat. 2668, which amended section 1334 to limit District Courts' bankruptcy jurisdiction after April 1, 1984 to appeals from final judgments, orders and decrees of bankruptcy courts. Such a repeal will leave section 1334 in its present form and permit continuation of the procedure under which the bankruptcy and district courts are now successfully operating. Any other necessary conforming amendments will, of course, also have to be made.

on the motion as (D)(3)(b) requires. Nonetheless, in light of the provision in paragraph (C)(2) of the General Order for withdrawal of the reference of Title 11 and related matters to a Bankruptcy Judge "by the District Court at any time on its own motion," we conclude that no useful purpose would be served—and, indeed, that the efficient administration of justice would positively be impaired—if resolution of this motion to dismiss, filed on October 25, 1982, were further delayed.

We therefore decline to accept defendants' highly technical reading of the General Order. Judge Toles' obligation under the Order is clear, *see* (D)(3)(b), and we direct him to proceed accordingly with the pretrial phase of this proceeding.

## CONCLUSION

The defendants' motion to dismiss for lack of subject matter jurisdiction is denied as is their motion to stay discovery. An appropriate order will enter.