**In re SEVEN SPRINGS APARTMENTS, PHASE II, Debtor.**

**SEVEN SPRINGS APARTMENTS, PHASE II, Appellant,**

**v.**

**CALMARK ASSETS, et al., Appellees.**

**Civ. A. No. C 83–1660A.**
**Bankruptcy No. 81–01382A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 15, 1983.

Edward J. Hardin, Joyce Bihary and Janice E. Garlitz, Atlanta, Ga., for appellant.

Margaret H. Murphy, Atlanta, Ga., for appellee Calmark Asset Management, Inc.

J. Timothy White, Atlanta, Ga., for appellee I.J. Enterprises, Inc.

## ORDER

VINING, District Judge.

In this bankruptcy appeal the debtor challenges the bankruptcy court's conclu-

sion that neither the bankruptcy court nor the federal district court has subject matter jurisdiction over bankruptcy cases in the wake of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See In re Seven Springs Apartments, Phase II,* 33 B.R. 458 (1983) (Norton, J.). The issues on appeal are (1) whether the federal district court has subject matter jurisdiction over bankruptcy cases and (2) whether the Local Rule adopted by this en banc district court is a constitutionally permissible means of delegating initial bankruptcy duties from the district court to the bankruptcy court.

## I. BACKGROUND

The debtor, Seven Springs Apartments, Phase II, is a California partnership composed of Seven Springs Phase II Associates (a California limited partnership); Clinton E. and Gloria L. Cooper, and Pacific Plaza Equities ("PPE") (a California corporation). The debtor was formed on September 16, 1980, for the purpose of acquiring Phase II of a garden apartment complex known as Seven Springs Apartments.

PPE was the former owner of both Phase I and Phase II. On September 24, 1980, PPE conveyed Phase II to the debtor, and on or about that same date PPE conveyed Phase I to a different group of investors, referred to as the "Pacific Pipe Group." As an element of the dual conveyances to the debtor and the Pacific Pipe Group, the debtor and the Pacific Pipe Group signed on September 24, 1980, a wrap-around promissory note (the "PPE Note") in the original principal amount of $11,000,000. The PPE Note provided for payment on February 15, 1981, of $1,150,000 to the holder of another instrument, the so-called "Plaza Wrap Note"[1] On February 15, 1980, pursuant to an extension arrangement, PPE effected on behalf of the debtor and Pacific Pipe a payment in the amount of $142,792.15, which was applied to principal and interest. However, the payment of the balance was not made, and on March 31, 1981, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

In addition to the PPE and Plaza Wrap Notes, Phase I and Phase II are subject to at least three additional mortgages which encumber both phases as a single parcel of property.[2] With the sole exception of the Plaza Wrap Note, all of these mortgages and debts are currently being serviced.

As a result of the default on the promissory note and the debtor's petition in bankruptcy, a plethora of litigation erupted. In an effort to resolve this litigation a settlement was negotiated, and on July 7, 1982, its terms were announced to the bankruptcy court. To implement the settlement the debtor filed a Revised Plan of Reorganization on July 23, 1982. The settlement and the Debtor's Reorganization Plan provided that PPE would cure all defaults and bring current all payments on the underlying debt of Phases I and II by making cash payments of $1,150,000. With the consent of the Pacific Pipe Group, both phases of the property were then to be sold to The Considine Co. ("Considine") for a total purchase price of $15,000,000.

On August 24, 1982, the debtor and Considine entered into an Agreement for Sale. The Agreement was transmitted to secured creditors on August 25, 1982, and submitted to the bankruptcy court for approval on September 8, 1982. Considine insisted in

---

1. I.J. Enterprises, Inc. an appellee, is the current holder of the Plaza Wrap Note.

2. The three additional common mortgages in order of reverse seniority are: (1) the "Prior Note," a wrap-around promissory note, currently held by Calmark Asset Management, Inc. (an appellee), in the original principal amount of $8,600,000.00; (2) the "Memphis Underlying Note," a promissory note currently held by Bankers Trust Co., in the original principal amount of $4,432,500.00; and (3) the "Calmark Underlying Note," a purchase money real estate note in the original principal amount of $100,000.00.

Phase I is also encumbered by an additional promissory note which is currently held by Georgia Federal Savings and Loan Corp. This note, commonly referred to as the "Atlanta Underlying Note," does not encumber any aspect of Phase II.

**990**

the Agreement for Sale that all indebtedness which matured before November 30, 1989, have its due date extended to November 30, 1989. This provision affected two of the notes: the Plaza Wrap Note held by I.J. Enterprises and the Prior Note held by Calmark.[3] I.J. Enterprises had conditionally consented to the extension, provided the transaction was finalized before November 30, 1982. Calmark never consented to this provision and claimed that a due-on-sale clause in its note entitled it to accelerate the entire amount of its indebtedness upon the proposed sale of the property to Considine.[4]

A confirmation hearing on the debtor's Revised Plan and Application for Approval of the Agreement for Sale was held on September 20–21, 1982. On December 24, 1982, over three months after the confirmation hearing, the bankruptcy court had not yet ruled on the debtor's plan, and the Supreme Court's stay of its mandate in *Northern Pipeline* had expired.[5] On June 13, 1983, almost nine months after the confirmation hearing, the bankruptcy court confirmed the debtor's plan and acknowledged that it had intended to confirm the plan in November of 1982, but was unable to do so because of the "press of business."

The very next day, on June 14, 1983, the bankruptcy court entered an order revoking the Order of Confirmation. In its June 14

opinion the bankruptcy court concluded that *Northern Pipeline* precluded both a bankruptcy and a federal district court from confirming a Chapter 11 reorganization plan which affected the state law contract and property rights of the debtor and its creditors. The bankruptcy court also found the Local Rule invalid and held that it did not give the bankruptcy court legal or constitutional authority to enter an Order of Confirmation.

## II. THE JURISDICTIONAL ISSUE

### A. The Jurisdiction of District Courts Under 28 U.S.C. § 1471

■ The bankruptcy court predicated its conclusion that no federal court had jurisdiction over bankruptcy matters on the premise that *Northern Pipeline* invalidated all of section 241(a) of the Bankruptcy Reform Act of 1978 ("Reform Act"). Pub.L. 95–598, 92 Stat. 2549 (1978) (codified at 28 U.S.C. §§ 1471–1482 (Supp. III 1979)).[6] This court rejects the bankruptcy court's premise, and for the reasons stated below concludes that *Northern Pipeline* struck down the jurisdictional provisions relating only to the bankruptcy courts, and did not invalidate the separate, primary jurisdictional grant to the federal district courts.

Both legally and factually *Northern Pipeline* involved only the jurisdiction of the

---

3. *See supra* n. 1.

4. In its Order of Confirmation dated June 13, 1983, the bankruptcy court validated that provision of the Debtor's Plan which extended the maturity date of Calmark's note until November 30, 1989 (approximately 11 months after its original maturity date), and effectively invalidated Calmark's due-on-sale clause. *In re Seven Springs Apartments, Phase II,* BR No. 81–01382A (June 13, 1983). The bankruptcy court concluded that a bankruptcy reorganization court had the authority to ignore due-on-sale clauses, since compliance with due-on-sale clauses would defeat almost every reorganization attempt. *Id.* at 24–25. On June 14, 1983, 33 B.R. 458, the bankruptcy court revoked its Order of Confirmation, but based this revocation on the belief that it lacked subject matter jurisdiction in the wake of the Supreme Court's decision in *Northern Pipeline.* The bankruptcy court did not revoke the plan based on the

specific provisions contained therein, including Calmark's objection to both the 11-month extension and the invalidation of its due-on-sale clause.

5. In the interim, on December 17, 1983, the United States District Court for the Northern District of Georgia responded to the expiration of the Supreme Court's *Northern Pipeline* stay, and unanimously promulgated Local Rule Re: Jurisdiction of the United States Bankruptcy Court, Northern District of Georgia ("Local Rule"). The Local Rule became effective on December 25, 1982, and was subsequently modified on February 2, 1983.

6. Section 241(a) includes 28 U.S.C. § 1471, the concurrent jurisdictional grant to the federal district and bankruptcy courts. Sections 1471(a) and (b) refer only to the jurisdiction of the district courts, whereas section 1471(c) refers to the bankruptcy court's jurisdiction.

bankruptcy courts. The question framed by the *Northern Pipeline* plurality was whether "the assignment by Congress to *bankruptcy judges* of the jurisdiction granted in § 241(a) of the Bankruptcy Act of 1978 . . . violate[d] Art. III of the Constitution." 102 S.Ct. at 2862. (emphasis added). After analyzing whether the Reform Act impermissibly vested the bankruptcy courts with the essential attributes of Article III power, the Court concluded "that the broad grant of jurisdiction *to the bankruptcy courts* contained in § 241(a) is unconstitutional. . . ." *Id.* 102 S.Ct. at 2880.

Stated simply, *Northern Pipeline* invalidated only the jurisdiction relating to the bankruptcy court. The Court undoubtedly recognized the two-tiered bankruptcy system existing under the Reform Act, *id.* 102 S.Ct. at 2862 n. 3, yet, it neither expressly nor implicitly invalidated the jurisdictional grant to the district courts in bankruptcy matters. This is understandable, since the constitutionally offensive provision in the Reform Act was the delegation of Article III powers to non-Article III judges. The Court recognized that "Art. III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws." *Id.* 102 S.Ct. at 2874. Federal district courts are not the "legislative courts" referred to in the *Northern Pipeline* decision, and since they are Article III courts, the constitutional evil present in the delegation of Article III powers to bankruptcy courts is simply absent.

The conclusion by the bankruptcy court that footnote 40 in the plurality opinion invalidated all of section 1471 is erroneous.[7]

Footnote 40 merely stated that the single statutory grant of jurisdiction *to the bankruptcy courts* was not divisible. In other words, under section 1471(c), bankruptcy court jurisdiction over traditional bankruptcy claims could not be severed from similar jurisdiction over nontraditional, state-law claims. Footnote 40 did not state that the concurrent jurisdiction between federal district and bankruptcy courts could not be discerned or severed. *See White Motor Corp. v. Citibank, N.A.* 704 F.2d 254, 259–60 (6th Cir.1983); *In re Color Craft Press, Ltd.,* 27 B.R. 962, 964 (D.C.D.Utah 1983) (en banc).

This interpretation is further supported by Justice Rehnquist's concurrence in which he was joined by Justice O'Connor. Justice Rehnquist would hold only that portion of the Reform Act unconstitutional which enabled a bankruptcy court to entertain and decide a nontraditional, state law claim. *Id.* 102 S.Ct. at 2882. (Rehnquist, J. concurring). But Justice Rehnquist agreed that "this [limited] grant of authority is not readily severable from the remaining grant of authority to Bankruptcy Courts under § 241(a) . . . ." *Id.* (citing footnote 40 of the plurality opinion). This concurrence emphasizes that it is the grant of jurisdiction to the bankruptcy courts in section 1471(c) which is unconstitutional, not the district courts' bankruptcy jurisdiction under section 1471(a) and (b).

Several other courts have reached this same conclusion. To date, every United States Court of Appeals confronted with the issue has unanimously concluded that *Northern Pipeline* invalidated the jurisdic-

---

7. In pertinent part footnote 40 states:

It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. . . . We think it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose.

102 S.Ct. at 2880 n. 40.

tional grant to the bankruptcy courts embodied in section 1471(c), and did not affect the jurisdictional grant in sections 1471(a) and (b). *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 200 (3d Cir.1983); *White Motor Corp.*, 704 F.2d at 260; *First National Bank of Tekamah v. Hansen*, 702 F.2d 728, 729 (8th Cir.), *cert. denied*, ─── U.S. ───, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *Braniff Airways, Inc. v. CAB*, 700 F.2d 214, 215 (5th Cir.), *cert. denied*, ─── U.S. ───, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). *See also Martin-Trigona v. Smith*, 712 F.2d 1421, 1425–26 (D.C. Cir.1983) (interpreting *Northern Pipeline* as dealing with the lack of jurisdiction only in non-Article III bankruptcy courts). In this district both Judge Murphy and Judge Freeman have concluded that the district courts have bankruptcy jurisdiction under sections 1471(a) and (b). *See Chemical Bank v. Broadloom Industries, Inc.*, Civil Action No. C83–213R (N.D.Ga. May 27, 1983) (Murphy, J.); *Pettigrew v. Kutak Rock & Huie*, 30 B.R. 989 (D.C.N.D.Ga.1983) (Freeman, J.). Judge O'Kelley has also concluded that the district court has bankruptcy subject matter jurisdiction. *In re Tara Corp., Inc.*, Civil Action No. C83–266A (N.D.Ga. April 29, 1983).

For the foregoing reasons this court holds that sections 1471(a) and (b) were not invalidated by the Supreme Court's *Northern Pipeline* decision; consequently, federal district courts have subject matter jurisdiction to entertain bankruptcy cases.

### B. Jurisdiction of the District Courts Under 28 U.S.C. § 1334

Assuming, arguendo, that *Northern Pipeline* invalidated all of section 1471, and not merely section 1471(c), under 28 U.S.C. § 1334, this court would still conclude that

federal district courts have original jurisdiction to hear bankruptcy cases decided before April 1, 1984. Section 1334 provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy." Under the Reform Act, section 1334 was amended to grant the district courts appellate jurisdiction over final judgments, orders, and decrees of the bankruptcy courts. However, in the Reform Act Congress provided that during the transition period between the applicability of the Bankruptcy Act of 1898 and the Reform Act, the original version of section 1334 ("old section 1334") remained in full force and effect until April 1, 1984.[8]

Congress was fully aware of the potential constitutional problems inherent in its broad grant of jurisdiction to non-Article III bankruptcy judges in section 1471(c). *Northern Pipeline*, 102 S.Ct. at 2866 n. 12. Consequently, Congress left section 1334 intact during the transition period in order to incorporate "some jurisdictional insurance" into the new statute. *Color Craft Press*, 27 B.R. at 964. In addition, "Congress' failure to repeal the old section 1334 [was not] an oversight." *White Motor Corp.*, 704 F.2d at 261. Instead, Congress purposefully chose not to eradicate the original jurisdiction historically residing in the district courts. Intending to avoid precisely the situation created by *Northern Pipeline*, Congress left the district courts' jurisdiction over bankruptcy matters in tact. *Id.*[9]

In this case, the bankruptcy court held that the "new" section 1334 of the Reform Act implicitly repealed the old version of section 1334, and that the new version applied during the transition period. The bankruptcy court reasoned that the

---

**8.** The Reform Act provides for a transition period between October 1, 1979, and April 1, 1984. *See* Pub.L. No. 95–598, § 402, 92 Stat. 2549, 2682 (1978).

**9.** In addition to the *White Motor Corp.* court, several other courts have concluded that the old section 1334 affords the federal district courts independent jurisdiction over bankruptcy cases, at least until April 1, 1984. *See First National Bank of Tekamah*, 702 F.2d at 729;

*Braniff Airways*, 700 F.2d at 215; *Pettigrew*, *supra*, at 994; *Chemical Bank v. Jenson & Ferrari, Inc.*, Civ. No. C83–164R, Slip Op. at 3 (N.D.Ga. June 16, 1983) (Murphy, J.); *Lear Colorprint Corp. v. Enco Mfg Co.*, 29 B.R. 438, 440 (D.C.N.D.Ill.1983); *Color Craft Press*, 27 B.R. at 965; *Prudential Ins. Co. of America v. Stoffer Corp.*, 26 B.R. 860, 861 (D.C.E.D.Mich. 1983).

two section 1334s could not co-exist, and, thus, Congress must have intended to repeal the older statute. For three reasons this court rejects the bankruptcy court's reasoning and conclusion. First, Congress expressly reserved implementing the new section 1334 until April 1, 1984, and new section 1334 remains *wholly dormant* until April 1, 1984. Reform Act, § 402(b). Second, repeals by implication are not favored and a court should not repeal a statute where Congress has not done so. *Rosecrans v. United States,* 165 U.S. 257, 262, 17 S.Ct. 302, 304, 41 L.Ed. 708 (1897). Finally, "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). In this case a repeal by implication is wholly inappropriate. Not only has Congress expressly declined to repeal old section 1334, but new section 1334 and old section 1334 are completely reconcilable since new section 1334 remains ineffective until a specified date.

The bankruptcy court declined finding jurisdiction under old section 1334 for an additional reason; it concluded that "[t]he comprehensive package of § 241(a) jurisdiction in §§ 1471–1482 statutorily preempts any bankruptcy grant which may be perceived in § 1334...." 33 B.R. at 494. However, the bankruptcy court had concluded that all of section 241(a) was unconstitutional. Thus, the bankruptcy court committed a logical and legal error because it ignored the well-accepted rule of statutory construction that the repeal of an older statute by a newer statute becomes a nullity when the newer statute is invalidated. 1A, C. Sands, *Sutherland Statutory Construction* § 23.24 (4th ed 1972). This was the precise result reached in *White Motor Corp.* in which the Sixth Circuit recognized:

> [U]nder long-standing principles of statutory construction, § 1334 is "revived" by the invalidation of the new § 1471. It has long been held that a statute which is unconstitutional does not repeal a prior statute on the subject when a contrary construction would create a void in the law which the legislative body did not intend. The prior statute is "revived" to avoid a chaotic hiatus in the law.

704 F.2d at 261 (citations omitted).

■ The bankruptcy court also concluded that section 1334 was no longer extant because its grant of jurisdiction is more limited than that of sections 1471(a) and (b). This court recognizes that section 1334 only provides the district courts with original jurisdiction over all "matters and proceedings" in bankruptcy while sections 1471(a) and (b) provide the district court with jurisdiction over all cases under Title 11 and all civil proceedings arising under Title 11. However, since this court has concluded that the Debtor's Reorganization Plan is a traditional, or "core," bankruptcy matter, the jurisdictional grant embodied in section 1334 is more than sufficient for this court to confirm a plan of reorganization. Thus, the relative extent of section 1334 and section 1471 jurisdiction need not be addressed here.

In sum, the weight of authority, the legislative history, the clear wording of the relevant statutory provisions, and applicable principles of statutory construction make it clear that this court has independent bankruptcy jurisdiction under 28 U.S.C. § 1334.

C. Jurisdiction Under 28 U.S.C. § 1331

■ In addition to the jurisdiction conferred by 28 U.S.C. § 1471(a) and (b) and 28 U.S.C. § 1334, the appellants argue that the district court has jurisdiction to hear bankruptcy matters under 28 U.S.C. § 1331. Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions ... [arising] under the ... laws ... of the United States." 28 U.S.C. § 1331(a) (1976). However, the bankruptcy court concluded that section 1331 does not confer any jurisdiction upon the district courts over actions arising under the federal bankruptcy laws.

Section 1331 reflects a long-standing congressional policy to provide a federal forum for the vindication of all federal rights. *Zwickler v. Koota,* 389 U.S. 241, 247, 88

S.Ct. 391, 395, 19 L.Ed.2d 444 (1967). *Northern Pipeline* did not suggest, nor did the bankruptcy court conclude, that the entire Reform Act is unconstitutional; instead, only aspects of the jurisdictional grant are invalid. Thus, the federal right created by the Reform Act is still valid, particularly here where the debtor is proposing a traditional Chapter 11 bankruptcy reorganization.[10] The only question is whether there is a federal forum to vindicate that right. This court has concluded there is, *see supra* §§ IIA & B, and holds that section 1331 provides an additional, independent basis for this jurisdiction.

The Supreme Court has recognized that the federal bankruptcy laws can properly serve as a basis of section 1331 federal question jurisdiction. In *Lovell v. Newman,* 227 U.S. 412, 33 S.Ct. 375, 57 L.Ed. 577 (1913), for example, the Supreme Court addressed whether the lower court's determination of a bankruptcy trustee's damage claim was subject to review by a writ of error. Although it found no federal question jurisdiction on the facts before it, the Court held that the federal question jurisdiction would have been proper if the plaintiff had relied "upon any right specially conferred upon him under the Federal [Bankruptcy] Statute...." *Id.* at 423, 33 S.Ct. at 379. The next year, the Court rearticulated the premise that an action arising under the Federal Bankruptcy Act of 1898 was one arising under the laws of the United States. *See Hull v. Burr,* 234 U.S. 712, 722–23, 34 S.Ct. 892, 896–97, 58 L.Ed. 1557 (1914). In recent years several other courts have concluded that section 1331 provides an independent basis for federal court jurisdiction over bankruptcy matters. *See National Mutual Insurance Co. v. Tidewater Transfer Co.,* 337 U.S. 582, 611, 69 S.Ct. 1173, 1187, 93 L.Ed. 1556 (1949) (Rutledge, J., concurring) ("[F]ederal court adjudication of disputes arising pursuant to

bankruptcy ... legislation is conventional federal-question jurisdiction."); *Girardier v. Webster College,* 563 F.2d 1267, 1270 (8th Cir.1977) (discharge under the Bankruptcy Act which forbade the withholding by creditors of benefits they otherwise would grant supported federal question jurisdiction under section 1331); *Pettigrew v. Kutak Rock & Huie,* 30 B.R. 989 at 994–95 (D.C.N.D.Ga. 1983) (Freeman, J.) (district court has jurisdiction over cases which "arise under" the Reform Act); *Walter E. Heller & Co. v. Matlock Trailer Corp.,* 27 B.R. 318, 325 (D.C. M.D.Tenn.1983) (proceeding to lift the automatic bankruptcy stay of 11 U.S.C. § 362 is an action arising under the laws of the United States within the meaning of section 1331); *Handsome v. Rutgers University,* 445 F.Supp. 1362, 1364 (D.N.J.1978) ("Insofar as plaintiff can be said to be asserting a claim which arises under the Bankruptcy Act, it appears undisputed that this action 'arises under' federal law."); *Kay Grose Rentals v. Johnson,* 26 B.R. 530, 532 (Bkrtcy.S.D.Ohio 1983) (question of dischargability under 11 U.S.C. § 727 is a federal question over which the district court has section 1331 jurisdiction).

The bankruptcy court primarily based its conclusion that section 1331 provided an insufficient basis for federal court jurisdiction over bankruptcy matters on the premise that the separate jurisdictional provisions in previous bankruptcy acts would be rendered mere surplusage. Although this court recognizes that Congress has routinely included a jurisdictional provision in every bankruptcy act since 1841, *see* 5 Stat. 446 (1841); 14 Stat. 517 (1867); 30 Stat. 545 (1898); 92 Stat. 2668 (1978), that separate jurisdictional grant neither expressly nor implicitly supplanted the general federal question jurisdiction of section 1331. Courts frequently have found jurisdiction under section 1331 and another, more expansive federal statute. *See Leroy v. Great*

10. The bankruptcy court concluded that section 1331 provides an insufficient basis for jurisdiction, in part, because section 1331 does not encompass the full jurisdiction granted under section 1471. As discussed with reference to the relative jurisdictional parameters of section 1334 and section 1471, *see supra* p. 993, this issue is irrelevant here because this case involves a traditional bankruptcy remedy—the confirmation of a reorganization plan under 11 U.S.C. § 1129.

*Western United Corp.,* 443 U.S. 173, 178–79, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979) (lower court found subject matter jurisdiction under section 1331 and three other specific, unrelated statutory grants of jurisdiction); *Colorado River Conservation District v. United States,* 424 U.S. 800, 809 n. 15, 96 S.Ct. 1236, 242 n. 15, 47 L.Ed.2d 483 (1976) (jurisdiction under 28 U.S.C. §§ 1331 and 1345). In addition, noted commentators have recognized "the grant of jurisdiction in Section 1331 is broadened by a great number of other statutes ... that grant jurisdiction [over] particular classes of federal question cases without regard to amount in controversy." C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 3561 at 390 (1975). Thus, this court concludes that the jurisdictional grants in the various bankruptcy statutes did not supplant section 1331; they merely supplemented it.

### III. THE VALIDITY OF THE LOCAL RULE

Having concluded that the federal district courts have jurisdiction to entertain bankruptcy matters, this court next addresses the remaining two issues: whether this en banc district court had authority to promulgate the Local Rule and whether the Rule is constitutional and inoffensive to the Supreme Court's holding in *Northern Pipeline.*

### A. Authority to Promulgate the Local Rule

The Local Rule was unanimously adopted by the United States District Court for the Northern District of Georgia on December 17, 1982, pursuant to the direction of the Judicial Council of the Eleventh Circuit. The power of the Judicial Council to make, and the subordinate courts to accept, such a direction is defined by statute. 28 U.S.C. § 332(d)(1) provides that "each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its

circuit." And 28 U.S.C. § 332(d)(2) directs that "all judicial officers and employees of the circuit [to] promptly carry into effect all orders of the judicial council." In addition, the Supreme Court has upheld as constitutional the grant power in section 332. *See Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970). In light of the near certain paralysis of the bankruptcy system with the approaching expiration of the Supreme Court's stay of its *Northern Pipeline* mandate, the Local Rule was "necessary and appropriate" within the meaning of section 332(d)(1). Accordingly, the Judicial Council of the Eleventh Circuit properly acted under section 332(d)(1) when it directed the district courts to adopt the Local Rule, and this en banc district court properly adopted the Local Rule in accordance with the duty imposed upon it by section 332(d)(2).

In addition to acting at the Judicial Council's mandate, the district court as an Article III court and as a court of bankruptcy had statutory rule-making authority to adopt the Local Rule. *See Pettigrew v. Kutak Rock & Huie, supra,* at 995 n. 8. As an Article III court the district court was empowered to "prescribe rules for the conduct of [its] business," 28 U.S.C. § 2071; additionally, "[e]ach district court by action of the majority of the judges thereof may from time to time make and amend rules governing its practice...." Fed.R.Civ.P. 83. As a "court of bankruptcy" under section 404(a) of the Reform Act, the district court had authority to adopt the Local Rule under 11 U.S.C. § 105.[11] Section 105 provides: "The bankruptcy court may issue any order ... that is necessary or appropriate to carry out the provisions of [Title 11]." There is little doubt that the Local Rule was both "necessary" and "appropriate" to effectuate the orderly administration of

---

11. The district court acting as a "court of bankruptcy" also has authority to promulgate the Local Rule pursuant to Bankruptcy Rule 9029 (formerly Bankruptcy Rule 927). Rule 9029 is a counterpart to Fed.R.Civ.Pro. 83, and pro-

vides: "Each bankruptcy court by action of a majority of the judges thereof may make and amend rule governing its practice and procedure...."

bankruptcy cases in the wake of the Supreme Court's *Northern Pipeline* decision.

■ These statutory grants of power, taken singularly or conjunctively, provided the district court with the requisite authority to adopt the Local Rule.[12] Several district and circuit courts have affirmed this rationale and upheld the authority of their local courts to adopt the Local Rule, whether that authority was based on 28 U.S.C. § 2071, Fed.R.Civ.P. 83, 11 U.S.C. § 105, or Bankruptcy Rule 927.[13]

■ In addition to the defined statutory grants of power, the Article III district courts have an inherent equitable power "to provide themselves with appropriate instru- ments required for the performance of their duties." *In re Peterson*, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920) (Brandeis, J.). The Local Rule is such an "appropriate instrument" enabling the district court to exercise the powers vested in it by virtue of 28 U.S.C. §§ 1331, 1334, and 1471. *See Pettigrew v. Kutak Rock & Huie, supra,* at 995 n. 8.[14]

### B. Constitutionality of the Local Rule

The remaining question raised in this appeal is whether the Local Rule satisfies the constitutional concerns expressed by the Supreme Court in *Northern Pipeline.* This

**12.** In its opinion the bankruptcy court challenged the authority of the district court to adopt the Local Rule because the bankruptcy court concluded that the Rule's automatic reference of bankruptcy matters to bankruptcy judges violated Fed.R.Civ.P. 53(b). This court does not accept the bankruptcy court's premise that bankruptcy judges are "special masters" within the meaning of Rule 53(b). By analogy, in *Mathews v. Weber,* 423 U.S. 261, 269, 96 S.Ct. 549, 553, 46 L.Ed.2d 483 (1976), the Supreme Court construed 28 U.S.C. § 636(b) which permitted district courts to delegate by local rule the initial decisionmaking duties in certain cases to the federal magistrates. Like similar provisions of the Local Rule at issue in this case, the local rule in *Weber* permitted magistrates to perform initial judicial functions, and provided that the district courts retained the right to review the record as a whole and the right to accept or reject the conclusions and recommendations of the magistrate. The Supreme Court held that a magistrate acting under such a local rule was not a special master within the meaning of Rule 53(b). *Id.* at 272–73, 96 S.Ct. at 555–56. Although in this case there is no statute granting such specific authority, those statutes and rules identified above grant the district court broad authority, enabling the court to develop mechanisms and procedures that permit it to carry out the business of the court. *See White Motor Corp.,* 704 F.2d at 261–64. Included in the business of the district court is the swift and efficient resolution of bankruptcy matters, and the Local Rule provides the mechanism to discharge this duty. In addition, there is a manifest congressional intent to have bankruptcy matters initially considered by bankruptcy judges. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 15–16, 153 (1978) U.S.Code Cong. & Admin.News, p. 5787. Accordingly, under the reasoning of *Weber* this court concludes that the initial reference of bankruptcy matters to bankruptcy judges under the Local Rule does not fall within the ambit of Rule 53(b), since district courts have the authority to establish mechanisms to carry out their business, since Congress has shown an intent to have bankruptcy matters initially considered by bankruptcy judges, and since the decisionmaking performed by a bankruptcy judge under the Local Rule is extremely limited.

**13.** *See White Motor Corp. v. Citibank,* 704 F.2d 254 (6th Cir.1983) (authority under § 2071 and § 105); *Braniff Airways, Inc. v. CAB,* 27 B.R. 231 (Bkrtcy.N.D.Tex.) (authority under § 2071, § 105, and Rule 927), *aff'd,* 700 F.2d 214 (5th Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *Chemical Bank v. Jensen & Verrari, Inc.,* Civ. No. C83–164R (N.D.Ga. June 16, 1983) (authority under Rule 83); *Williamson v. General Finance Co.* Civ. No. 83–68–COL (M.D.Ga. Apr. 25, 1983) (authority under § 207); *Pettigrew v. Kutak Rock & Huie,* 30 B.R. 989 (D.C.N.D.Ga.1983) (authority under § 2071, § 105, and Rule 927); *Q1 Corp. v. Reichenstein,* 28 B.R. 647 (E.D.N.Y. 1983) (authority under § 105 and Rule 927); *Lear Colorprint Corp. v. Enco Mfg. Co.,* 29 B.R. 438 (D.C.N.D.Ill.1983) (authority under Rule 83 and § 105); *Herrera v. Weaver Const. Co.,* 29 B.R. 49 (D.C.D.Col.1983) (authority under Rule 83); *Moody v. Martin,* 27 B.R. 991 (Bkrtcy.W. D.Wis.1983) (authority under § 2071); *Walter E. Heller Co. v. Matlock Trailer Corp.,* 27 B.R. 318 (D.C.M.D.Tenn.1983) (authority under Rule 83, § 105, and Rule 927); *Prudential Ins. Co. v. Stouffer Corp.,* 26 B.R. 860 (D.C.E.D.Mich.) (authority under § 105 and Rule 927), *supplemented,* 26 B.R. 1019 (D.C.E.D.Mich.1983).

**14.** Other courts have upheld the Local Rule on the basis of this inherent authority. *See Moody v. Martin,* 27 B.R. at 999 n. 4; *Braniff Airways, Inc. v. CAB,* 27 B.R. at 236–37; *Prudential Ins. Co. v. Stouffer Corp.,* 26 B.R. at 1021.

court concludes that appellees lacked standing to assert either of their constitutional challenges to the Local Rule, and that, in any event, the second challenge is not ripe. In addition, this court holds that the applicable sections of the Local Rule are constitutional since the Rule delegates only a defined set of functions to the bankruptcy court, and not the broad adjudicatory powers held unconstitutional in *Northern Pipeline.*

### i. The Mechanics of the Local Rule

The Local Rule was designed exclusively "to *supplement* existing law and rules [with] respect to the authority of the bankruptcy judges ... until Congress enacts an appropriate remedial legislation ... or until March 31, 1984, whichever first occurs." Local Rule § (a) (emphasis added). The Local Rule operates to refer all bankruptcy matters to the bankruptcy judges, *id.* § (c)(1), and permits the district court to withdraw this reference at any time on its own motion or on a timely motion by any party. *Id.* § (c)(2).

Bankruptcy matters are divided into two general classes: "related proceedings" and "traditional bankruptcy cases." *See id.* § (d)(2) & (3). Related proceedings are defined as those civil proceedings which, but for the bankruptcy petition, could have been brought in a state or a federal district court. *Id.* § (d)(3)(A). In a related proceeding, the Local Rule provides that a bankruptcy judge may not enter a judgment or dispositive order, unless the parties consent, but shall submit findings, conclusions, and a proposed order to the district judge. *Id.* § (d)(3)(B). The district judge then may conduct a *de novo* review of a case, and may accept or reject any of the bankruptcy judge's findings, proposals, or conclusions.

In the traditional bankruptcy case, on the other hand, the bankruptcy court's order or judgment is final *only if* (1) no party to the proceeding appeals the bankruptcy court's decision or order to the district court, and

(2) the bankruptcy court itself does not certify the order or judgment to the district court. *Id.* § (e)(2). If any party appeals, or if the bankruptcy judge certifies the order or judgment, the district court may conduct a full *de novo* review and may accept, reject, or modify the bankruptcy court's conclusions or recommendations. Like the review in the related proceedings case, no deference is afforded to the bankruptcy court's decision. Finally, the rule contains a nonexhaustive list of traditional bankruptcy matters, including "proceedings [concerning] ... the confirmation of plans." *Id.* § (d)(3)(A).[15]

### ii. Case or Controversy?: The Appellees' Claims

The Appellees assert the Local Rule is invalid for two reasons. First, they claim section (d)(3)(B) is unconstitutional because it permits a bankruptcy judge to enter a final order in a related proceeding if the parties consent. Second, they challenge as unconstitutional those sections relating to the traditional bankruptcy cases which operate to make the bankruptcy court's judgment final unless any party appeals or unless the bankruptcy judge certifies the order to the district court. *See* Local Rule §§ (c)(1), (d)(2), & (e)(2)(A)(i) & (ii). Consistent with the long-standing laudatory policy of avoiding deciding constitutional issues unless absolutely necessary, this court will examine Appellees' standing to challenge the Local Rule, and determine whether in any event, Appellees' second claim is ripe.

#### (a) Standing

■ In order to have standing to sue in federal court it is settled that:

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to [1] "show that he personally has suffered some actual or threatened injury as a result of the [challenged action]" ..., and that [2] the injury "fairly can be traced to the challenged action" and [3] "is likely to be redressed by a favorable decision."

---

**15.** The Local Rule substantially restricts the authority bankruptcy judges enjoyed prior to its promulgation, and prohibits them from, among other things, conducting jury trials, presiding over bankruptcy appeals, and enjoining other judicial proceedings. Local Rule § (d)(1).

*Valley Forge Christian College v. American United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). In this case this court finds that Appellees fail all three standing requirements with respect to both of their challenges to the Local Rule.

■ In their initial challenge to that section which permits a bankruptcy judge to enter a final order in a related proceeding if the parties consent, *see* Local Rule § (d)(3)(A), the Appellees do not argue that this case is a related proceeding within the meaning of the Rule. Indeed, the Local Rule defines the substantive issue challenged in this case—the confirmation of a reorganization plan—as a nonrelated, traditional bankruptcy proceeding. *Id.* In addition, this court has stated at the oral argument on this appeal that this case involves a traditional, rather than a related, proceeding. In any event, the alleged unconstitutionality of the Local Rule section (d)(3)(A) has absolutely no relevance to the Appellees' claim. The alleged injury the Appellees assert is the potential confirmation of the Debtor's Reorganization Plan which contains provisions adversely affecting the Appellees' financial interests. That section (d)(3)(A) of the Local Rule may permit a bankruptcy court to enter a final judgment in a related proceeding if the parties consent is not even remotely related to the Appellees' injury. The Debtor's Reorganization Plan will not be confirmed through the section (d)(3)(A) mechanism because this is not a related proceeding and because it is apparent that the parties do not consent to the substantive provisions of the Plan. Accordingly, this court concludes that Appellees' injury did not result from and cannot be traced to this allegedly unconstitutional section, and if this court invalidates section (d)(3)(A) it would have no effect on the Appellees' injury or claim.

■ With respect to their challenge to section (e)(2) of the Local Rule—the section which renders the bankruptcy court's order final *if* (1) no party appeals the decision and (2) the bankruptcy court itself does not certify the order to the district court—this court also finds that the Appellees lack standing. To reemphasize, their potential injury in this case is the confirmation of an unacceptable Debtor's Reorganization Plan. Although the Bankruptcy Court confirmed the Plan on June 13, 1983, it revoked its confirmation the next day. Thus, the validity of the specific provisions of the Plan is not an issue here. Stated simply, the Appellees have sustained no injury because the offensive provisions of the Plan are inoperative since the Plan was revoked. Even assuming the Bankruptcy Court reaffirms the Plan, it would be both premature and speculative, at best, to conclude that the invalidation of section (e)(2) would remedy the Appellees' injuries.

■ This court concludes that the Appellees would have standing to challenge section (e)(2) only if (1) the Debtor's Reorganization Plan was confirmed, (2) the Debtor's Plan contained a provision adverse to the Appellees' interests, (3) neither the debtor nor any Appellee appealed the confirmation to the district court, *and* (4) the bankruptcy court itself did not certify the confirmation to the district court. As a practical matter, however, the above scenario is unlikely to occur since there is a substantial probability that an Appellee whose interests were adversely affected by the confirmed Reorganization Plan would appeal the confirmation to the district court.[16]

(b) Ripeness

■ In addition to the lack of standing by the Appellees to challenge section (e)(2),

**16.** Assuming Appellees' challenges to the Local Rule can be viewed as asserting the constitutional rights of potential third parties, the court holds that the Appellees fail to satisfy a prudential limitation of standing. Absent a special relationship, a plaintiff must assert his own legal interests rather than those of third parties. *Laird v. Tatum,* 408 U.S. 1, 12–14, 92

S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166–67, 92 S.Ct. 1965, 1968, 32 L.Ed.2d 627 (1972). Although there may be some individuals who may sooner or later be injured by the challenged sections of the Local Rule, this court will wait for that day and will address their claims then. *See Gladstone, Realtors v.*

the court finds that this claim is not ripe. The ripeness doctrine, which is somewhat related to the standing doctrine, requires the plaintiff to demonstrate that: (1) it will sustain injury from the challenged action, (2) this injury would be redressed by the relief requested, and (3) the court's ability to resolve the issues presented would not be advanced by waiting until the uncompleted even occurs. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 81–82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978). In *International Long Shoremen's and Warehousemen's Union v. Boyd*, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954) (Frankfurter, J.), a "ripeness" case raising issues similar to those raised here, the Supreme Court held that a federal court cannot grant a declaratory judgment on the constitutionality of a particular construction of a federal statute as applied to an uncompleted, merely contemplated course of conduct. The court reasoned that the "[d]etermination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Id.* at 224, 74 S.Ct. at 448.

■ Although both *Duke Power* and *International Longshoremen's Union* involved challenges to statutes, rather than a local rule as in this case, the rationale of both cases is applicable here. Since this court has concluded that the Appellees failed to establish standing with respect to their section (e)(2) claim, they, by definition, also failed to satisfy the first two requirements of the ripeness doctrine under *Duke Power.*

In addition, three very good reasons exist for deferring a decision until some party sustains an injury from the operation of section (e)(2). First, it is very unlikely that in the wake of *Northern Pipeline* a bankruptcy court's decision will neither be appealed nor certified to the district court. Second, if this court determines this speculative issue at this stage, it would be a waste of scarce judicial resources. And finally, in the unlikely event some party suffers an injury from section (e)(2), it is in the best interest of this court to insure there will be the "concrete adverseness" necessary to crystalize the issues and resolve the case. Since this court finds that the Appellees have not been injured by section (e)(2) of the Local Rule, that a decision by this court striking down section (e)(2) would not affect the Appellees, that the event the Appellees challenge is unlikely to occur, and that the Appellees' claim is, at best, severely premature, this court holds that the Appellees' challenge to Local Rule section (e)(2) is not ripe.

Appellees appear to urge this court to invalidate the entire Local Rule if any aspect of the Rule is invalid, even those sections unrelated to their claim. This court declines to accept this invitation. Even assuming some sections of the Local Rule would not pass constitutional scrutiny if presented *by the proper parties at the proper time,* the court rejects Appellees' "baby and bathwater" suggestion that, of necessity, the entire Local Rule would be unconstitutional.[17]

## IV. CONCLUSION

In summary, this court concludes that *Northern Pipeline* did not affect this court's

*Village of Bellwood*, 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) ("a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to federal court to those litigants best suited to assert a particular claim.").

17. Appellees rely exclusively on *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.*, 712 F.2d 1305 (9th Cir.1983) to support their claim that sections (d)(2) and (e)(2) are

unconstitutional. *Pacemaker* involved the constitutionality of 28 U.S.C. § 636(c) which permitted federal magistrates, with the consent of the parties, to conduct trials and enter final judgments. Both Pacemaker and Instromedix consented to have a patent infringement case tried by a magistrate sitting without a jury. The Ninth Circuit held section 636(c) unconstitutional because under *Northern Pipeline* the consent provision offended Article III. The critical difference between *Pacemaker* and the instant case is that the constitutionality of the challenged section of the statute was directly at

subject matter jurisdiction over bankruptcy cases and that, with respect to their challenges to the Local Rule, the appellees lack standing and have failed to establish that their claims are ripe. Accordingly, this case is remanded to the bankruptcy court for proceedings consistent with this opinion, including, but not limited to, a determination of the validity of the debtor's Reorganization Plan.

issue in *Pacemaker*. Section 636(c) was the jurisdictional basis upon which the magistrate conducted the trial and entered the final judgment. Since section 636(c) was declared unconstitutional, the magistrate was without authority to hear *that* case. In this case, however, the Appellees ask this court to assess the constitutionality of sections unrelated to their alleged injury. Unlike the situation in *Pacemaker,* if this court holds as unconstitutional those sections of the Local Rule which Appellees challenge, it will not affect either the Appellees' case or the jurisdictional grant to the district court. As discussed earlier under the case or controversy mandate of Article III, it is beyond the purview of the district court to speculate as to the constitutionality of issues unrelated to the case at bar. The *Pacemaker* court did not do this and neither will this court.

Parenthetically, it is important to note that even the *Pacemaker* court recognized that a non-Article III court may perform the "functions of presiding over a trial and recommending a disposition, so long as the ultimate decision is made by the district judge." 715 F.2d at 1314. Implicitly then, under a *Pacemaker* analysis, those sections permitting *de novo* review by the district court are constitutional.