In re Joseph Owen BATTLES, Debtor.

Joseph Owen BATTLES, Plaintiff,

v.

FIRST CITIZENS NATIONAL BANK, Defendant.

Bankruptcy No. 83–00292.
Adv. No. 83–00241.

United States Bankruptcy Court,
D. New Hampshire.

Jan. 25, 1984.

David R. Decker, Laconia, N.H., for Joseph Owen Battles.

Robert M. Koch, Concord, N.H., for First Citizens Nat. Bank.

John R. Michels, Londonderry, N.H., interim trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The issue presented in this case is whether this court has jurisdiction to issue a restraining order to stop a foreclosure sale of the Chapter 13 debtor's farm and home property.

The foreclosing mortgagee asserts that the bankruptcy court lacks jurisdiction due to the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). It challenges as invalid the "Order For Interim Administration of the United States Bankruptcy Court For The District of New Hampshire", entered on December 23, 1982 by District Judges Devine and Loughlin, which otherwise clearly does give this court the power to act directly on this basic "core" matter of preserving the debtor's estate pending further proceedings relating to his Chapter 13 petition and plan.

The mortgagee makes a three-part argument: (1) that the *Northern Pipeline* decision struck down the *entire* jurisdictional grant in 28 U.S.C. § 1471, including that pertaining to the district judges as well as to the bankruptcy judges; (2) that even if the district court continues to have bankruptcy jurisdiction it had no statutory or other authority to support the entry of the Order of December 23, 1982; and (3) that the interim procedures adopted by that Order ("... until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline* ... or until March 31, 1984, whichever first occurs ...") once again attempts to give Article I bankruptcy judges powers which the Supreme Court held they can not constitutionally exercise.

The first and third arguments do not require any extended commentary. The contention that the district court no longer has any bankruptcy jurisdiction was demolished by District Judge Vining in his recent opinion in *In re Seven Springs Apartments, Phase II,* 34 B.R. 987, 11 B.C.D. 170 (D.N.D. Ga.1983), in which he collects the cases. All district and circuit courts which have reached the issue have agreed.

The contrary position taken by a number of bankruptcy courts, on the question of continuing jurisdiction in the district courts, was succinctly answered by District Judge Carter in *In re South Portland Shipyard Corp.,* 32 B.R. 1012, 10 B.C.D. 1385 (D.Maine 1983) as follows:

> "For the most part, these [bankruptcy] courts base their analysis on congressional intent to eliminate a bifurcated system of bankruptcy jurisdiction by placing all bankruptcy jurisdiction in a single forum, the Bankruptcy Court. The jurisdictional grants to the District Courts in § 1471(a) and (b) are viewed as non-grants, mere legitimating devices which are inseverable from § 1471(c)'s grant to the Bankruptcy Courts of the exercise of 'all of the jurisdiction conferred by this section on the district court.' 28 U.S.C. § 1471(c). Without doubt Congress did intend to eliminate the bifurcated system of bankruptcy jurisdiction with the enactment of Section 1471(c). *Congress' far more fundamental intent, however, was to establish a functioning bankruptcy system.* A determination that jurisdiction exists in the District Court is essential if that purpose is to be attained." (Emphasis supplied)

This court likewise finds it inappropriate to strain to read into the *Northern Pipeline* decision any intent to strike down *all* jurisdiction of bankruptcy matters in the federal courts in the face of the dominant Congressional purpose.

██ The further contention that the district court's December 23, 1982 Order requires an unconstitutional exercise of power by an Article I court simply does not fit the facts of the present case. The restraining order in question in no sense is a mere "related" matter such as the "state law" lawsuit that the Supreme Court held in *Northern Pipeline* must be tried by an Article III judge.

The matter at issue here is fundamental to administration of a bankruptcy estate, i.e., protection against its dismemberment while Bankruptcy Code proceedings are being pursued. Regardless of any intimations that may or may not be "sensed" from the numerous separate opinions and footnotes included in the *Northern Pipeline* plurality decision, it is quite clear that the Supreme Court to date has not *held* that an Article I bankruptcy judge can not exercise jurisdiction as to "core" bankruptcy matters.

Similarly, the citation by analogy to the recent decision by a Ninth Circuit panel in *Pacemaker Diagnostic Clinic, Inc., v. Instromedix, Inc.,* 712 F.2d 1305 (9th Cir.1983), is inapposite to the present case since *Pacemaker* involved the entry of ordinary civil money judgments by the U.S. Magistrates. [Rehearing en banc has been granted in Pacemaker but no decision by the entire Court of Appeals has yet been reported.]

This brings us to the real crux of the matter, i.e., the validity of the referral of "core" bankruptcy matters to this court by virtue of the Order of December 23, 1982.

The Order quotes the prior mandating action by the Judicial Council for the First Circuit:

> "Acting pursuant to the authority vested in the Judicial Council by 28 U.S.C. § 332(d), the Judicial Council of the First Circuit concludes that the uniform effective and expeditious administration of justice within this circuit requires that the attached rule for the administration of the bankruptcy system in this circuit be adopted by the district courts of this circuit pursuant to 11 U.S.C. § 105."

The Rule attached and adopted by the Order (hereinafter referred to as the "interim rule") begins with the following "Emergency Resolution" subsection:

> "The purpose of this rule is to supplement existing law and rules in respect to the

authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co., v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs."

"The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice."

"Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges."

The complete text of the interim rule is attached as an Exhibit to this Opinion.* It has been adopted in essentially the same language in all other federal districts in the nation. See 1 *Collier on Bankruptcy,* 15th Ed., Ch. 3 (special supp).

█ The bankruptcy ᵛ courts generally (and two district courts) have found the interim rule invalid, as being without statutory authority, and also as being in conflict with the limitations on referrals to special masters provided in Rule 53 of the Federal Rules of Civil Procedure. See, *In re South Portland Shipyard Corp.,* 32 B.R. 1012, 10 B.C.D. 1385 (D.Maine 1983) (dealing with a "core" bankruptcy matter); *In re Romeo J. Roy, Inc.,* 32 B.R. 1008, 10 B.C.D. 1392 (D.Maine 1983) (dealing with a "related" bankruptcy matter); In re *Matlock Trailer Corp.,* 27 B.R. 318, 8 C.B.C.2d 742 (D.M.D. Tenn.1983).

All other district and circuit courts which have reached this issue have found the interim rule valid. These decisions have

found the rule valid not only under 11 U.S.C. § 105, but also under the rule-making powers provided in 28 U.S.C. §§ 332(d) and 2071, and Rule 83 of the Federal Rules of Civil Procedure. See cases collected in *Seven Springs Apartments, supra,* 34 B.R. 987, 11 B.C.D. at pp. 174–176.

This court finds most persuasive the position taken by Judge Vining in *Seven Springs Apartments, supra,* 34 B.R. 987, 11 B.C.D. at footnote 12, p. 175, in which he recognizes that Rule 53 is not involved in, or an adequate support for, the promulgation of the interim rule. Instead he finds justification in the rule-making authority cited above, and in a further inherent power of the district court:

"In addition to the defined statutory grants of power, the Article III district courts have an inherent equitable power 'to provide themselves with appropriate instruments required for the performance of their duties.' *In re Peterson,* 253 U.S. 300, 312 [40 S.Ct. 543, 547, 64 L.Ed. 919] (1920) (Brandeis, J.). The Local Rule is such an 'appropriate instrument' enabling the district court to exercise the powers invested in it by virtue of 28 U.S.C. §§ 1331, 1334, and 1471...."

"Other courts have upheld the Local Rule on the basis of this inherent authority. See *Moody v. Martin,* 27 B.R. [991] at 999 n. 4 [ (D.Wis.W.D.1983) ]; *Braniff Airways, Inc. v. CAB,* 27 B.R. [220] at 236–37 [ (Bkrtcy.N.D.Tex.1982) ]; *Prudential Ins. Co. v. Stouffer Corp.,* 26 B.R. [860] at 1021 [ (D.E.D.Mich.1983) ]."

The fashioning of "appropriate instruments" to aid the district courts in the performance of their duties, as validated in *Ex Parte Peterson, supra,* obviously can not be extended to a complete displacement of the district court merely at the whim, and to suit the convenience of, the district judge. See *La Buy v. Howes Leather Co.,* 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).

In the case of the interim rule, however, we have an extraordinary situation in

---

*The interim rule exhibit was deleted for purposes of publication.

which the remedy selected has been strictly limited in time, i.e., to expire by March 31, 1984. It serves a public need fully consistent with the legislative intent evidenced by the transitional period provided under the 1978 Bankruptcy Code and by the failure of Congress to terminate the funding for the existing bankruptcy court structure following the lapse of the Supreme Court's *Northern Pipeline* stay on December 24, 1982. This court also takes judicial notice that Congress allowed the stay to lapse in the context of publicized circulation of the proposed interim rule remedy by the Administrative Office of the U.S. Courts.

The Supreme Court has ruled that a "clear legislative base" may support the issuance of rules and regulations having the force of "a law of the United States" as phrased in the perjury statute, even though no other specific statute was involved. *United States v. Hvass*, 355 U.S. 570, 575, 78 S.Ct. 501, 504, 2 L.Ed.2d 496 (1958). While the present situation is not directly comparable, the *Hvass* case demonstrates that Congressional authorization for the exercise of power by the federal courts may "jump the gap" of the lack of a specific authorizing statute where the Congressional purpose is otherwise clear.

In the final analysis it must be admitted that there is no direct precedent for the use of the rule-making powers of the district courts, or the "all-writs" powers under 11 U.S.C. § 105 or 28 U.S.C. § 1651, in a referral system as embodied in the interim rule. However, the one thing that Congress patently did *not* intend by its failure to enact new legislation by December 24, 1982 was that the existing bankruptcy court judges and their staff should sit and twiddle their thumbs, all the while drawing full pay, but having no jurisdiction to act in any bankruptcy matter whatsoever—even as to matters not within the actual holding in the *Northern Pipeline* case. This unreasonable result is compelled only if "jurisdiction" is conceived as some sort of metaphysical flow of energy beyond the powers of rational men to deal with on a rational basis in a truly extraordinary situation.

There is no danger here of an unlimited abdication by the district courts of their judicial functions on mere whim and caprice. The interim rule was set up to expire with the transition period provided by the 1978 Code. It avoids the obvious chaos of transferring hundreds of thousands of bankruptcy cases to the already-overcrowded dockets of the district courts by the sensible use of an existing, unrepealed, structure of bankruptcy courts and their supporting staffs and facilities.

The court accordingly concludes that the interim rule is a valid exercise of judicial power to implement a reasonably-perceived Congressional purpose regarding the adjudication of bankruptcy matters and therefore denies the mortgagee's motion to dismiss for lack of jurisdiction.

The court derives some comfort in reaching this result from the fact of promulgation of the new Bankruptcy Rules by the Supreme Court, effective August 1, 1983, which contemplate throughout the continued exercise of jurisdiction in bankruptcy matters by the separate bankruptcy courts. As noted by the Second Circuit in *Salomon v. Keiser*, 722 F.2d 1574 (2nd Cir.1983), the Supreme Court would not be expected to issue such rules if it felt its *Northern Pipeline* decision had the broad invalidating effect as construed by some courts and commentators.

An appropriate restraining order is entered separately in this cause.